TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA*
*Collective and potential Rule 23 Class Plaintiffs*
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
johntroy@troypllc.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

GENXIANG ZHANG, and
XINHUI ZHANG,
*on behalf of themselves and others similarly situated,*   **Case No: 17-cv-7066**
                                                  Plaintiff,

                                                       **29 U.S.C. § 216(b)**
                          v.                           **COLLECTIVE ACTION &**
                                                       **FED. R. CIV. P. 23 CLASS**
                                                       **ACTION**
HIRO SUSHI AT OLLIE'S INC.
        d/b/a Hiro Sushi at Ollie's,                   **COMPLAINT**
FREEDOM PLACE REST LLC
        d/b/a Hiro Sushi at Ollie's,
160 RESTAURANT CONCEPTS LLC
        d/b/a Hiro Sushi at Ollie's,
39 WEA FOOD GROUP, INC.
        d/b/a Mah Jong Chinese Kitchen,
TAO RONG
        a/k/a Cindy Rong,
YI LU,
ALAN PHILLIPS,
CHRISTOPHER J. PHELAN, and
SHLOMO SELA,
                                    Defendants.

------------------------------------------------------------------x

    Plaintiffs GENXIANG ZHANG and XINHUI ZHANG (hereinafter referred to as

"Plaintiffs"), on behalf of themselves and others similarly situated, by and through their

attorneys, Troy Law, PLLC, hereby bring this complaint against Defendants HIRO SUSHI AT

OLLIE'S INC. d/b/a Hiro Sushi at Ollie's, FREEDOM PLACE REST LLC d/b/a Hiro Sushi at

Ollie's, 160 RESTAURANT CONCEPTS LLC d/b/a Hiro Sushi at Ollie's, 39 WEA FOOD

GROUP, INC. d/b/a Mah Jong Chinese Kitchen, TAO RONG a/k/a Cindy Rong, YI LU, ALAN

PHILLIPS, CHRISTOPHER J. PHELAN, and SHLOMO SELA, (hereinafter referred to as "Defendants").

## INTRODUCTION

1.      This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendants for violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.* and of the New York Labor Law ("NYLL") and implementing New York Codes, Rules, and Regulations ("NYCRR"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA, NYLL, and NYCRR by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, wages for all hours worked, minimum wage for each hour worked, overtime for all hours worked in excess of forty (40) in each workweek, and spread-of-hours for all hours worked in excess of ten (10) in each workday.

3.      Defendants willfully failed to record all of the time that Plaintiffs and similarly situated employees work or worked, including time worked in excess of forty (40) hours per week and ten (10) hours per day.

4.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid wages for off-the-clock work caused by time shaving, (2) unpaid minimum wage, (3) unpaid overtime, (4) liquidated damages, (5) prejudgment and post-judgment interest; and/or (6) attorneys' fees and costs.

5.      Plaintiffs further allege pursuant to the NYLL § 650 *et seq.* and 12 NYCRR § 146 that they are entitled to recover from the Defendants: (1) unpaid wages for off-the-clock work caused by time shaving, (2) unpaid minimum wage, (3) unpaid overtime, (4) unpaid spread-of-hours; (5) liquidated damages equal to one hundred percent (100%) of the sum of unpaid wages, unpaid

overtime, and unpaid spread-of-hours under the New York Wage Theft Prevention Act 2009 N.Y.S.N. 8380, (6) improper meal credit deductions, (7) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (8) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day (9) nine percent (9%) simple prejudgment interest as provided by the New York Civil Practice Law and Rules ("CPLR") NYCPLR § 5004, (10) post-judgment interest, and (11) attorneys' fees and costs.

6.      Plaintiffs allege that Defendants breached an implied contract by failing to reimburse Plaintiff GENXIANG ZHANG for expenses paid for the purchase, repair, utilization, and maintenance of electric bicycles for delivery.

## JURISDICTION AND VENUE

7.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

**PLAINTIFF**

9.      Plaintiff GENXIANG ZHANG is a resident of Queens County, New York and was employed by Defendants as a deliveryman.

10.     Plaintiff XINHUI ZHANG is a resident of Queens County, New York and was employed by Defendants as an oil wok and water wok.

**DEFENDANTS**

***Corporate Defendants***

11.     Defendant HIRO SUSHI AT OLLIE'S INC. d/b/a Hiro Sushi at Ollie's is a domestic business corporation organized under the laws of the State of New York with a principal address at 160 Freedom Place, New York, NY 10069.

12.     Upon information and belief, HIRO SUSHI AT OLLIE'S INC. d/b/a Hiro Sushi at Ollie's is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

13.     Upon information and belief, HIRO SUSHI AT OLLIE'S INC. d/b/a Hiro Sushi at Ollie's purchased and handled goods moved in interstate commerce.

14.     Defendant FREEDOM PLACE REST LLC d/b/a Hiro Sushi at Ollie's is a domestic business corporation organized under the laws of the State of New York with a principal address at 160 Freedom Place, New York, NY 10069.

15.     Upon information and belief, FREEDOM PLACE REST LLC d/b/a Hiro Sushi at Ollie's is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

16.     Upon information and belief, FREEDOM PLACE REST LLC d/b/a Hiro Sushi at Ollie's purchased and handled goods moved in interstate commerce.

17.     Defendant 160 RESTAURANT CONCEPTS LLC d/b/a Hiro Sushi at Ollie's is a domestic business corporation organized under the laws of the State of New York with a principal address at 160 Freedom Place, New York, NY 10069.

18.     Upon information and belief, 160 RESTAURANT CONCEPTS LLC d/b/a Hiro Sushi at

Ollie's is a business engaged in interstate commerce that has gross sales in excess of Five

Hundred Thousand Dollars ($500,000) per year.

19.      Upon information and belief, 160 RESTAURANT CONCEPTS LLC d/b/a Hiro Sushi at

Ollie's purchased and handled goods moved in interstate commerce.

20.      Defendant 39 WEA FOOD GROUP, INC. d/b/a Mah Jong Chinese Kitchen is a domestic

business corporation organized under the laws of the State of New York with a principal address

at 35 West End Avenue, New York, NY 10023.

21.      Upon information and belief, 39 WEA FOOD GROUP, INC. d/b/a Mah Jong Chinese

Kitchen is a business engaged in interstate commerce that has gross sales in excess of Five

Hundred Thousand Dollars ($500,000) per year.

22.      Upon information and belief, 39 WEA FOOD GROUP, INC. d/b/a Mah Jong Chinese

Kitchen purchased and handled goods moved in interstate commerce.

***Individual Defendant***

23.      The Individual Defendants are officers, directors, managers, and/or majority shareholders

or owners of the Corporate Defendants and being among the ten largest corporate shareholders

are individually responsible for unpaid wages under the New York Business Corporation Law

("NYBSC") § 630(a).

24.      Defendant TAO RONG a/k/a Cindy Rong (1) had the power to hire and fire employees,

(2) supervised and controlled employee work schedules and conditions of employment, (3)

determined employee rates and methods of payment, and (4) maintained employee records at

Hiro Sushi at Ollie's.

25.      Upon information and belief, TAO RONG a/k/a Cindy Rong is the principal day-to-day

manager of Hiro Sushi at Ollie's and Mah Jong Chinese Kitchen responsible for hiring,

termination, discipline, setting employee schedules and tasks, and paying employee wages, as

well as the New York Division of Alcoholic Beverage Control for HIRO SUSHI AT OLLIE'S

INC. d/b/a Hiro Sushi at Ollie's.

26.     TAO RONG a/k/a Cindy Rong acted intentionally and maliciously and is an employer

pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. §

791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally

liable with HIRO SUSHI AT OLLIE'S INC. d/b/a Hiro Sushi at Ollie's, FREEDOM PLACE

REST LLC d/b/a Hiro Sushi at Ollie's, 160 RESTAURANT CONCEPTS LLC d/b/a Hiro Sushi

at Ollie's, and 39 WEA FOOD GROUP, INC. d/b/a Mah Jong Chinese Kitchen.

27.     Defendant YI LU (1) had the power to hire and fire employees, (2) supervised and

controlled employee work schedules and conditions of employment, (3) determined employee

rates and methods of payment, and (4) maintained employee records at Hiro Sushi at Ollie's.

28.     Upon information and belief, YI LU is the daughter of TAO RONG a/k/a Cindy Rong

and the cashier at Hiro Sushi at Ollie's, is actively involved in the day-to-day operations of Hiro

Sushi at Ollie's, and had the authority to hear employee grievances and effect changes to the

quality and terms of employees' employment, including changing their schedules, compensation

rates, disciplining, hiring, and termination.

29.     YI LU acted intentionally and maliciously and is an employer pursuant to FLSA, 29

U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL §

2, and regulations promulgated thereunder, and is jointly and severally liable with HIRO SUSHI

AT OLLIE'S INC. d/b/a Hiro Sushi at Ollie's, FREEDOM PLACE REST LLC d/b/a Hiro Sushi

at Ollie's, 160 RESTAURANT CONCEPTS LLC d/b/a Hiro Sushi at Ollie's, and 39 WEA

FOOD GROUP, INC. d/b/a Mah Jong Chinese Kitchen.

30.     Defendant ALAN PHILLIPS (1) had the power to hire and fire employees, (2) supervised

and controlled employee work schedules and conditions of employment, (3) determined

employee rates and methods of payment, and (4) maintained employee records at Hiro Sushi at

Ollie's.

31.     Upon information and belief, ALAN PHILLIPS hired TAO RONG a/k/a Cindy Rong and

installed her as chief manager at Hiro Sushi at Ollie's and Mah Jong Chinese Kitchen, but also

frequently inspected both restaurants himself, disciplined employees, and had the authority to

change employee schedules, change employee compensation rates, hire employees, and

terminate employees.

32.     ALAN PHILLIPS acted intentionally and maliciously and is an employer pursuant to

FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well

as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with

HIRO SUSHI AT OLLIE'S INC. d/b/a Hiro Sushi at Ollie's, FREEDOM PLACE REST LLC

d/b/a Hiro Sushi at Ollie's, 160 RESTAURANT CONCEPTS LLC d/b/a Hiro Sushi at Ollie's,

and 39 WEA FOOD GROUP, INC. d/b/a Mah Jong Chinese Kitchen.

33.     Defendant CHRISTOPHER J. PHELAN (1) had the power to hire and fire employees,

(2) supervised and controlled employee work schedules and conditions of employment, (3)

determined employee rates and methods of payment, and (4) maintained employee records at

Hiro Sushi at Ollie's.

34.     Upon information and belief, CHRISTOPHER J. PHELAN is the principal or majority

shareholder of HIRO SUSHI AT OLLIE'S INC. d/b/a Hiro Sushi at Ollie's, FREEDOM PLACE

REST LLC d/b/a Hiro Sushi at Ollie's, and 160 RESTAURANT CONCEPTS LLC d/b/a Hiro

Sushi at Ollie's.

35.     CHRISTOPHER J. PHELAN acted intentionally and maliciously and is an employer

pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with HIRO SUSHI AT OLLIE'S INC. d/b/a Hiro Sushi at Ollie's, FREEDOM PLACE REST LLC d/b/a Hiro Sushi at Ollie's, 160 RESTAURANT CONCEPTS LLC d/b/a Hiro Sushi at Ollie's, and 39 WEA FOOD GROUP, INC. d/b/a Mah Jong Chinese Kitchen.

36.     Defendant SHLOMO SELA (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at Hiro Sushi at Ollie's.

37.     Upon information and belief, SHLOMO SELA is the principal or majority shareholder of 39 WEA FOOD GROUP, INC. d/b/a Mah Jong Chinese Kitchen.

38.     SHLOMO SELA acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with HIRO SUSHI AT OLLIE'S INC. d/b/a Hiro Sushi at Ollie's, FREEDOM PLACE REST LLC d/b/a Hiro Sushi at Ollie's, 160 RESTAURANT CONCEPTS LLC d/b/a Hiro Sushi at Ollie's, and 39 WEA FOOD GROUP, INC. d/b/a Mah Jong Chinese Kitchen.

## **STATEMENT OF FACTS**

**DEFENDANTS COMMITTED THE FOLLOWING ALLEGED ACTS KNOWINGLY, INTENTIONALLY, AND WILLFULLY AGAINST THE PLAINTIFF, THE FLSA COLLECTIVE, AND THE CLASS**

39.     At all relevant times, Defendants unlawfully failed to pay Plaintiffs and similarly situated employees for all hours worked due to a policy of time shaving.

40.     Defendants paid Plaintiffs and similarly situated employees for scheduled hours only, rather than for actual hours worked, resulting in unpaid hours, unpaid overtime hours, and unpaid spread of hours.

41.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

42.     While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

43.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful overtime of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

44.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful spread of hours for workdays that began and ended ten (10) hours apart.

45.     At all relevant times, Defendants knowingly and willfully failed to keep full and accurate records of Plaintiffs' hours worked and wages paid.

46.     Defendants failed to keep full and accurate records in order to mitigate liability for wage violations.

47.     At all relevant times, Defendants knowingly and willfully failed to furnish Plaintiffs and similarly situated employees notice that they were claiming tip credit towards Plaintiffs' and similarly situated employees' minimum wage.

48.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notices in their primary languages reflecting rates of pay and payday as well as paystubs that listed the employee's name, the employer's

name, the employer's address and telephone number, the employee's rate or rates of pay, any deductions made from employees' wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

49.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages;  the employee's name; the name of the employer;  the address and phone number of the employer;  the employee's rate or rates of pay and basis thereof; the employee's gross wages;   the employee's deductions;  allowances, if any, claimed as part of the minimum wage;  net wages; the employee's regular hourly rate or rates of pay; the employee's overtime rate or rates of pay;   the employee's number of regular hours worked, and the employee's number of overtime hours worked.

50.     Pursuant to 12 NYCRR § 146-2.2 and 29 U.S.C. § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of tip credit.

51.     Defendants knew that the nonpayment of wages for all hours worked, payment of wages less than the minimum wage, the nonpayment of overtime wages at one and one-half time (1.5x) employees' regular rates, and the nonpayment of spread of hours would financially injure Plaintiffs and similarly situated employees, and violate state and federal laws.

52.     At all relevant times, Defendants failed to post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

53.     Defendants improperly claimed a meal credit allowance from Plaintiffs' and similarly situated employees' wages in violation of the NYLL.

**PLAINTIFF GENXIANG ZHANG**

54.     From on or about April 2015 to August 2015, Plaintiff was employed by Defendants to

work as a deliveryman at Mah Jong Chinese Kitchen, 35 West End Avenue, New York, NY 10023.

55.     At the time he was hired, Plaintiff was not given a written notice in his primary language (Chinese) regarding all of the following items: his rate or rates of pay and basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical and mailing addresses of the employer's main office or principal place of business; and the telephone number of the employer.

56.     For nine (9) weeks between April 2015 to August 2015, Plaintiff's work schedule ran from 11:00 to 22:00, eleven (11) hours per day, six (6) days per week.

57.     For four (4) weeks between April 2015 to August 2015, Plaintiff's work schedule ran from 11:00 to 22:00, eleven (11) hours per day, five (5) days per week.

58.     From April 2015 to August 2015, in addition to his regular duties as a deliveryman, Plaintiff was required to perform non-tipped side work, including moving materials and supplies, especially the meats and noodles used to make dumplings, between Hiro Sushi at Ollie's and Mah Jong Chinese Kitchen. Plaintiff spent about two (2) hours per day on non-tipped side work.

59.     From April 2015 to August 2015, Plaintiff was afforded two (2) meal breaks, each lasting ten (10) minutes, at 15:00 and 20:00. However, if a delivery order came in during Plaintiff's break, he was required to cut his break short.

60.     As a result, for (9) weeks between April 2015 and August 2015, Plaintiff worked sixty-four (64) hours per week, and for four (4) weeks between April 2015 and August 2015, Plaintiff worked fifty-three (53) hours per week.

61.     From April 2015 to August 2015, Plaintiff recorded his hours on a timeclock.

62.     However, Plaintiff was paid only for eight (8) hours each day.

63.     From April 2015 to August 2015, Plaintiff was paid at a rate of six dollars ($6.00) per

hour.

64.     Defendant's wage statements failed to accurately provide Plaintiff notice of all of the

following: the dates of work covered by that payment of wages;  his name; the name of the

employer;  the address and phone number of the employer;  his rate or rates of pay and basis

thereof; his  gross wages;  his deductions;  allowances, if any, claimed as part of the minimum

wage;  net wages; his regular hourly rate or rates of pay; his overtime rate or rates of pay;  his

number of regular hours worked, and his number of overtime hours worked.

65.     From April 2015 to August 2015, Plaintiff was not paid overtime for weeks in which he

worked more than forty (40) hours.

66.     From April 2015 to August 2015, Plaintiff was not paid spread of hours for days in which

he finished work more than ten (10) hours after he started.

67.     From August 2015 to the present, Plaintiff was employed by Defendants at Hiro Sushi at

Ollie's at 160 Freedom Place, New York, NY 10069.

68.     Plaintiff continued receiving wage statements from 39 WEA FOOD GROUP, INC. for

work he did at Hiro Sushi at Ollie's until on or about December 25, 2015.

69.     From on or about February 20, 2017 to June 19, 2017, Plaintiff received wage statements

from HIRO SUSHI AT OLLIE'S INC.

70.     From on or about July 17, 2017 to July 24, 2017, Plaintiff received wage statements from

a corporation called "Ollies @ Hiro Sushi Inc.," located at 160 Freedom Place, New York, NY

10069, the same location as HIRO SUSHI AT OLLIE'S INC.

71.     From August 2015 to August 14, 2017, Plaintiff's regular work schedule ran:

a.     From 16:00 to 22:00, six (6) hours per day, three (3) days per week; and

b.     From 17:00 to 21:00, four (4) hours per day, two (2) days per week.

72.     Plaintiff was afforded one (1) meal break of ten (10) minutes at 20:00. However, if a delivery order came in during Plaintiff's break, he was required to cut his break short.

73.     Plaintiff was required to stay between twenty (20) and thirty (30) minutes after his regular shift ended approximately four (4) days out of the week.

74.     Therefore, from August 2015 to August 14, 2017, Plaintiff worked approximately twenty-six and eighty-three hundredths (26.83) hours each week.

75.     From August 14, 2017 to the present, Plaintiff's hours per week were reduced to seventeen (17).

76.     From August 2015 to the present, Plaintiff recorded his time in on a time clock. Plaintiff was sometimes permitted to record his leaving time on the timeclock, but on other occasions Defendants clocked him out.

77.     From August 2015 to the present, Plaintiff's wage statements did not accurately reflect Plaintiff's hours worked.

78.     While Plaintiff's wage statement of September 25, 2015 says he worked twenty-seven (27) hours the preceding week, Plaintiff's wage statements on February 27, 2017, June 19, 2017, and July 24, 2017 say he worked eighteen (18), twenty and one half (20.5), and twenty-one (21) hours respectively.

79.     From August 2015 to the present, Plaintiff was paid for fewer hours than he actually worked.

80.     From December 26, 2015 to the present, Plaintiff was paid at a rate of seven dollars and fifty cents ($7.50) per hour.

81.     From August 2015 to the present, Defendants took against Plaintiff's wages a meal deduction to which they were not entitled based on the meal breaks they afforded Plaintiff. Defendants claimed a credit of twenty-two dollars ($22.00) per week from August 2015 to the present, with the exception of July 2017, when they claimed a credit of fifteen dollars and fifty cents ($15.50) per week.

82.     From August 2015 to the present, Plaintiff spent approximately thirty (30) minutes each day on non-tipped side work, including sweeping the restaurant and loading restaurant materials (including dumplings) into the boss's car.

83.     August 2015 to the present, Defendants failed to provide Plaintiff with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages;  his name; the name of the employer;  the address and phone number of the employer;  his rate or rates of pay and basis thereof; his  gross wages;  his deductions;  allowances, if any, claimed as part of the minimum wage;  net wages; his regular hourly rate or rates of pay; his overtime rate or rates of pay;  his number of regular hours worked, and his number of overtime hours worked.

84.     While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

85.     While employed by Defendants, Plaintiff was required to use and maintain a delivery vehicle to benefit Defendants' business. Defendants failed to reimburse Plaintiff for the costs of maintaining his delivery vehicle, or for mileage.

**PLAINTIFF XINHUI ZHANG**

86.     From on or about March 1, 2015 to May 31, 2015, Plaintiff was employed by Defendants to work as an oil wok and water wok at Hiro Sushi at Ollie's at 160 Freedom Place, New York, NY 10069.

87.     Plaintiff was hired by TAO RONG a/k/a Cindy Rong.

88.     Plaintiff was fired by TAO RONG a/k/a Cindy Rong. Plaintiff also witnessed TAO

RONG a/k/a Cindy Rong fire another employee, a fry wok of Shanghainese descent, who had

worked at Hiro's Sushi at Ollie's for three (3) months before being fired.

89.     The reason given for Plaintiff's firing was lack of business, but upon information and

belief, Plaintiff was fired as part of Defendants' policy of only keeping kitchen workers

employed for three (3) months.

90.     Plaintiff's job duties were to fry pork ribs, cut cuts of pork, beef, and chicken in to

manageable chunks, peel shrimp, and wash and cut vegetables for frying in a water wok.

91.     At the time he was hired, Plaintiff was not given a written notice in his primary language

(Chinese) regarding all of the following items: his rate or rates of pay and basis thereof;

allowances claimed as part of the minimum wage;  the regular pay day designated by the

employer;  the name of the employer;  any "doing business as" names used by the employer;  the

physical and mailing addresses of the employer's main office or principal place of business; and

the telephone number of the employer.

92.     Throughout his employment, Plaintiff's regular work schedule ran from 10:45 to 23:00,

Wednesdays to Mondays, for twelve and one quarter (12.25) hours per day, six (5) days per

week.

93.     Plaintiff's schedule was set by TAO RONG a/k/a Cindy Rong.

94.     Throughout his employment, Plaintiff was afforded one (1) fifteen-minute meal break

during the day. If an order came in during his break, Plaintiff was required to cut his break short.

95.     Throughout his employment, Plaintiff worked seventy-two (72) hours per week.

96.     Throughout his employment, Plaintiff was paid a flat salary of two thousand three

hundred dollars $2,300.00 per month.

97.     Plaintiff was paid by a combination of checks at the end of each week, and cash at the end of each month. Plaintiff received wage statements for that part of his wages which was paid by check.

98.     For the period from March 9, 2015 to March 15, 2015, Plaintiff was paid by check at a rate of eight dollars and seventy-five cents ($8.75) per hour for thirty and one-half (30.5) hours worked, with a thirty-one cent ($0.31) per hour meal credit, for a total of two hundred sixty-six dollars and eighty-eight cents ($266.88) before credits and deductions and two hundred forty dollars and forty-three cents ($240.43) after credits and deductions.

99.     For the period from March 16, 2015 to March 22, 2015, Plaintiff was paid by check at a rate of eight dollars and seventy-five cents ($8.75) per hour for forty (40) hours worked and a rate of fourteen dollars and eighty-eight cents ($14.88) for two (2) overtime hours worked, with a thirty-one cent ($0.31) per hour meal credit applied to 40 hours, for a total of three hundred seventy-nine dollars and seventy-five cents ($379.75) before credits and deductions and three hundred thirty dollars and eighty-nine cents ($330.89) after credits and deductions.

100.    For the period from March 23, 2015 to March 29, 2015, Plaintiff was paid by check at a rate of eight dollars and seventy-five cents ($8.75) per hour for forty (40) hours worked and a rate of fourteen dollars and eighty-eight cents ($14.88) for two (2) overtime hours worked, with a thirty-one cent ($0.31) per hour meal credit applied to 40 hours, for a total of three hundred seventy-nine dollars and seventy-five cents ($379.75) before credits and deductions and three hundred thirty dollars and eighty-nine cents ($330.89) after credits and deductions.

101.    For the period from March 30, 2015 to April 5, 2015, Plaintiff was paid by check at a rate of eight dollars and seventy-five cents ($8.75) per hour for forty (40) hours worked and a rate of

fourteen dollars and eighty-eight cents ($14.88) for two (2) overtime hours worked, with a thirty-one cent ($0.31) per hour meal credit applied to 40 hours, for a total of three hundred seventy-nine dollars and seventy-five cents ($379.75) before credits and deductions and three hundred thirty dollars and eighty-nine cents ($330.89) after credits and deductions.

102.     For the period from April 6, 2015 to April 12, 2015, Plaintiff was paid by check at a rate of eight dollars and seventy-five cents ($8.75) per hour for forty (40) hours worked and a rate of fourteen dollars and eighty-eight cents ($14.88) for two (2) overtime hours worked, with a thirty-one cent ($0.31) per hour meal credit applied to 40 hours, for a total of three hundred seventy-nine dollars and seventy-five cents ($379.75) before credits and deductions and three hundred thirty dollars and eighty-nine cents ($330.89) after credits and deductions.

103.     For the period from April 13, 2015 to April 19, 2015, Plaintiff was paid by check at a rate of eight dollars and seventy-five cents ($8.75) per hour for forty (40) hours worked and a rate of fourteen dollars and eighty-eight cents ($14.88) for two (2) overtime hours worked, with a thirty-one cent ($0.31) per hour meal credit applied to 40 hours, for a total of three hundred seventy-nine dollars and seventy-five cents ($379.75) before credits and deductions and three hundred thirty dollars and eighty-nine cents ($330.89) after credits and deductions.

104.     For the period from April 20, 2015 to April 26, 2015, Plaintiff was paid by check at a rate of eight dollars and seventy-five cents ($8.75) per hour for forty (40) hours worked and a rate of fourteen dollars and eighty-eight cents ($14.88) for two (2) overtime hours worked, with a thirty-one cent ($0.31) per hour meal credit applied to 40 hours, for a total of three hundred seventy-nine dollars and seventy-five cents ($379.75) before credits and deductions and three hundred thirty dollars and eighty-nine cents ($330.89) after credits and deductions.

105.     For the period from April 27, 2015 to May 3, 2015, Plaintiff was paid by check at a rate

of eight dollars and seventy-five cents ($8.75) per hour for forty (40) hours worked and a rate of fourteen dollars and eighty-eight cents ($14.88) for two (2) overtime hours worked, with a thirty-one cent ($0.31) per hour meal credit applied to 40 hours, for a total of three hundred seventy-nine dollars and seventy-five cents ($379.75) before credits and deductions and three hundred thirty dollars and eighty-nine cents ($330.89) after credits and deductions.

106.    For the period from May 4, 2015 to May 10, 2015, Plaintiff was paid by check at a rate of eight dollars and seventy-five cents ($8.75) per hour for forty (40) hours worked and a rate of fourteen dollars and eighty-eight cents ($14.88) for two (2) overtime hours worked, with a thirty-one cent ($0.31) per hour meal credit applied to 40 hours, for a total of three hundred seventy-nine dollars and seventy-five cents ($379.75) before credits and deductions and three hundred thirty dollars and eighty-nine cents ($330.89) after credits and deductions.

107.    For the period from May 11, 2015 to May 17, 2015, Plaintiff was paid by check at a rate of eight dollars and seventy-five cents ($8.75) per hour for forty (40) hours worked and a rate of fourteen dollars and eighty-eight cents ($14.88) for two (2) overtime hours worked, with a thirty-one cent ($0.31) per hour meal credit applied to 40 hours, for a total of three hundred seventy-nine dollars and seventy-five cents ($379.75) before credits and deductions and three hundred thirty dollars and eighty-nine cents ($330.89) after credits and deductions.

108.    For the period from May 18, 2015 to May 24, 2015, Plaintiff was paid by check at a rate of eight dollars and seventy-five cents ($8.75) per hour for forty (40) hours worked and a rate of fourteen dollars and eighty-eight cents ($14.88) for two (2) overtime hours worked, with a thirty-one cent ($0.31) per hour meal credit applied to 40 hours, for a total of three hundred seventy-nine dollars and seventy-five cents ($379.75) before credits and deductions and three hundred thirty dollars and eighty-nine cents ($330.89) after credits and deductions.

109.    For the period from May 25, 2015 to May 31, 2015, Plaintiff was paid by check at a rate

of eight dollars and seventy-five cents ($8.75) per hour for sixteen (16) hours worked, with a

thirty-one cent ($0.31) per hour meal credit, for a total of one hundred forty dollars ($140.00)

before credits and deductions and one hundred twenty-eight dollars and sixty-nine cents

($128.69) after credits and deductions.

110.    For the month of March, 2015, Plaintiff was paid one thousand two hundred ten dollars

and thirty-three cents ($1,210.33) in cash.

111.    For the month of April, 2015, Plaintiff was paid six hundred fifty four dollars and forty-

one cents ($654.41) in cash.

112.    For the month of May, 2015, Plaintiff was paid eight hundred thirty dollars and eighty-

seven cents ($830.87) in cash.

113.    None of the above cash payments was sufficient to cover the thirty (30) hours per week

that Plaintiff worked and that was not reflected on his wage statements.

114.    Plaintiff therefore worked some hours per week without being paid and without being

paid overtime, because of Defendants' policy of time shaving.

115.    Defendants failed to withhold taxes against the portion of Plaintiff's wages that was paid

in cash.

116.    A meal credit of thirty-one cents ($0.31) per hour, applied to the first forty (40) hours

Plaintiff worked per week, for the single meal Plaintiff ate per day, amounts to more than the two

dollar and eight-five cent ($2.85) credit employers are permitted to take per meal under 12

N.Y.C.R.R. § 146.

117.    Defendants took unlawful meal credits against Plaintiff's wages.

118.    Throughout his employment, Defendants failed to provide Plaintiff with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages;  his name; the name of the employer;  the address and phone number of the employer;  his rate or rates of pay and basis thereof; his  gross wages;  his deductions;  allowances, if any, claimed as part of the minimum wage;  net wages; his regular hourly rate or rates of pay; his overtime rate or rates of pay;  his number of regular hours worked, and his number of overtime hours worked.

119.    While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

120.    Throughout his employment, Plaintiff was not paid spread of hours for days in which he finished work more than ten (10) hours after he started.

## COLLECTIVE ACTION ALLEGATIONS

121.    Plaintiffs bring this action individually and on behalf of all other current and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and who were not compensated at least the hourly minimum wage and/or overtime for all hours worked in excess of forty (40) per week (the "Collective Action Members.")

## CLASS ACTION ALLEGATIONS

122.    Plaintiffs bring their NYLL claims pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

123.    All said persons, including Plaintiffs, are referred to herein as the "Class."

124.    The Class members are readily ascertainable. The number and identity of the Class

members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

### *Numerosity*

125.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number can be based are presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the Class.

### *Commonality*

126.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.      Whether Defendant employed Plaintiffs and the Class members within the meaning of the NYLL;

b.      Whether Plaintiffs and the Class members were entitled to and paid minimum wage under the NYLL;

c.      Whether Plaintiffs and the Class members were entitled to and paid overtime under the NYLL;

d.      Whether Plaintiffs and the Class members were entitled to and paid spread-of-hours pay under the NYLL and NYCRR;

e.      Whether Defendants maintained a policy, pattern, and/or practice of failing to provide statutory meal periods;

f.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs' and the Class members' employment, or timely thereafter;

g.      Whether Defendants provided paystubs detailing the rates of pay and credits taken toward the minimum wage to Plaintiffs and the Class members each payday; and

h.      At what common rate, or rates subject to a common method of calculation were and are Defendants required to pay the Class members for their work.

*Typicality*

127.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate policies of Defendants, as alleged herein, of failing to pay minimum wage and/or overtime. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

*Adequacy*

128.    Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

*Superiority*

129.    A class action is superior to other available methods for the fair and efficient adjudication

of this controversy, particularly in the context of wage-and-hour litigation where individual Class

members lack the financial resources to vigorously prosecute a lawsuit against corporate

defendants. Class action treatment will permit a large number of similarly-situated persons to

prosecute their common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expenses that numerous individual actions engender.

Because the losses, injuries, and damages suffered by each of the individual Class members are

small in the sense pertinent to class action analysis, the expenses and burden of individual

litigation would make it extremely difficult or impossible for the individual Class members to

redress the wrongs done to them. Further, important public interests will be served by addressing

the matter as a class action. The adjudication of individual litigation claims would result in a

great expenditure of Court and public resources; however, treating the claims as a class action

would result in a significant saving of these costs. The prosecution of separate actions by

individual members of the Class would create a risk of inconsistent and/or varying adjudications

with respect to the individual members of the Class, establishing incompatible standards of

conduct for Defendants and resulting in the impairment of Class members' rights and the

disposition of their interests through actions to which they were not parties. The issues in this

action can be decided by means of common class-wide relief. In addition, if appropriate, the

Court can, and is empowered to, fashion methods to efficiently manage this action as a class

action.

130.    Defendants and other employers throughout the state of New York violate the NYLL.

Current employees are often afraid to assert their rights out of fear of direct or indirect

retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Nonpayment of Minimum Wage
### Brought on behalf of the Plaintiffs and the FLSA Collective]

131.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

132.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the similarly-situated Collective Action Members, for some or all of the hours they worked.

133.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional amount as liquidated damages.

134.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiff and the Collective Action Members at the statutory minimum wage when they knew or should have known that such was due and that failing to do so would financially injure Plaintiff and the Collective Action Members.

### COUNT II.
### [Violations of the New York Labor Law—Nonpayment of Minimum Wage
### Brought on behalf of the Plaintiffs and the Rule 23 Class]

135.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

136.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of

NYLL NYLL §§ 2 and 651.

137.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory

minimum wage to Plaintiffs and the Class for some or all of the hours they worked.

138.    Defendants knowingly and willfully violated Plaintiffs' and similarly-situated Class

Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

139.    After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N.

8380, an employer who fails to pay the minimum wage shall be liable, in addition to the amount

of any underpayments, for liquidated damages equal to one hundred percent (100%) of the

shortfall plus interest.

### COUNT III.
### [Violations of the Fair Labor Standards Act—Nonpayment of Overtime
### Brought on behalf of the Plaintiffs and the FLSA Collective]

140.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

141.    The FLSA provides that no employer engaged in commerce shall employ a covered

employee for a work week longer than forty (40) hours unless such employee receives

compensation for such employment at a rate not less than one and one-half times (1.5x) the

regular rate at which he is employed, or one and one-half times (1.5x) the minimum wage,

whichever is greater. 29 U.S.C. § 207(a).

142.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207

shall be liable to the employees affected in the amount of their unpaid overtime compensation,

and in an additional equal amount as liquidated damages. 29 USC § 216(b).

143.    Defendants' failure to pay Plaintiffs and the FLSA Collective overtime violated the

FLSA.

144.    At all relevant times, Defendants had, and continue to have, a policy and practice of

refusing to pay overtime at the statutory rate to Plaintiffs and the Collective Action Members for all hours worked in excess of forty (40) per workweek, which violated and continues to violate the FLSA, 29 U.S.C §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

145.    The FLSA and supporting regulations require employers to notify employees of the requirements of the employment law. 29 C.F.R. § 516.4.

146.    Defendants willfully failed to notify Plaintiffs and the FLSA Collective of the requirements of their employment laws in order to facilitate their exploitation of Plaintiffs' and the FLSA Collective Members' labor.

147.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and the Collective Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known that failing to do so would financially injure Plaintiffs and the Collective.

**COUNT IV.**
**[Violations of the New York Labor Law—Nonpayment of Overtime**
**Brought on behalf of the Plaintiffs and the Rule 23 Class]**

148.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

149.    After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, an employer who fails to pay overtime shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to one hundred percent (100%) of the shortfall plus interest.

150.    At all relevant times, Defendants had a policy and practice of refusing to pay overtime at one and one-half times (1.5x) Plaintiffs' and the Class Members' regular hourly rate or the minimum wage, whichever is greater.

151.    Defendants' failure to pay overtime violated the NYLL.

152.    Defendants' failure to pay overtime was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Failure to Pay Spread of Hours
### Brought on behalf of Plaintiffs and Rule 23 Class]

153.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

154.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et seq.*, and 12 NYCRR § 146-1.6.

155.    Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of 29 CFR § 531.33—Unlawful Meal Credit
### Brought on behalf of Plaintiffs and the FLSA Collective]

156.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

157.    29 C.F.R. § 531.33 provides for employers to legally deduct the fair value or reasonable cost of meals furnished to employees, provided that it does not include a profit to the employer or to any affiliated person.

158.    Defendants' automatic meal deductions on Plaintiffs' paychecks, regardless of whether Plaintiffs and the FLSA Collective members take the meals provided, underscores that Defendants' meal policy is primarily made for Defendants' benefit.

159.    Defendants' use of meal credit towards Plaintiffs and the FLSA Collective was not in good faith.

## COUNT VII.
### [Violation of 12 NYCRR § 146—Unlawful Meal Credit
### Brought on behalf of Plaintiffs and the Rule 23 Class]

160.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

161.    12 N.Y.C.R.R. § 146 provides for employers to legally deduct the fair value or

reasonable cost of each meal furnished to employees, up to two dollars and eighty-five cents

$2.85 per meal.

162.    Defendants' automatic hourly meal deductions on Plaintiffs' paychecks, regardless of

how many meals the Plaintiffs and the Class members actually took, are not permitted.

163.    Defendants' automatic hourly meal deductions on Plaintiffs' and the Class members'

paychecks was not in good faith.

## COUNT VIII.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
### Brought on behalf of Plaintiffs and Rule 23 Class]

164.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

165.    The NYLL requires that employees provide: a noon day meal period of at least thirty (30)

minutes for employees who work a shift of more than six hours extending over the noon day

meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at

least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later

than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning

and end of the shift for employees whose shift lasts more than six hours and starts between 1 p

m. and 6 a.m. NYLL § 162.

166.    Defendants failed to provide meal periods required by NYLL § 162 for every day that

Plaintiffs and the Rule 23 class work or worked.

167.    Though the Department of Labor commissioner may permit a shorter time to be fixed for

meal periods than hereinbefore provided, such permit must be in writing and be kept

conspicuously posted in the main entrance of the establishment. No such permit is posted.

168.    Defendants' failure to provide the meal periods required by NYLL §162 was not in good faith.

## COUNT IX.
**[Violation of New York Labor Law—Failure to Keep Records
Brought on behalf of Plaintiffs and Rule 23 Class]**

169.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

170.    Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by 12 NYCRR § 146-2.1.

171.    As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

172.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

173.    Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs were not in good faith.

## COUNT X.
**[Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice
Brought on behalf of Plaintiffs and Rule 23 Class]**

174.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

175.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer;

any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL § 195-1(a).

176.    Defendants intentionally failed to provide notice to employees in violation of NYLL § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

177.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

178.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. NYLL § 198(1-b).

## COUNT XI.
### [Violation of New York Labor Law—Failure to Provide Wage Statements Brought on behalf of Plaintiffs and Rule 23 Class]

179.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

180.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

181.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff's payday.

182.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for

each Plaintiffs together with costs and attorneys' fees pursuant to New York Labor Law. NYLL

§198(1-d).

## COUNT XII.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Delivery Vehicles, Including Depreciation, Insurance, Maintenance, and Repairs Brought on behalf of Plaintiff]

183.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

184.    Throughout the relevant period, Defendants required their deliverymen to bear all the "out

of pocket" costs associated with their vehicles, including the purchase, maintenance, repair, and

mileage of delivery vehicles, including bicycles and electric bicycles.

185.    Based on their personal experience and available information, Plaintiff can document

actual "out of pocket" vehicle-related expenses.

186.    The conduct of Defendants, and the course of Defendants' conduct between the parties,

evidenced an intent for Plaintiff to maintain the delivery vehicle in working condition.

187.    Plaintiff purchased, maintained, and repaired his delivery vehicle at his own expense.

188.    Plaintiff performed deliveries for the sole benefit of the Defendants.

189.    Defendants neither explicitly nor implicitly requested Plaintiff to cease the purchase of

gasoline and/or the maintenance of the vehicle.

190.    As a result of the afore-alleged conduct of the parties, an implied contract arose between

the terms of which are that the Plaintiff would incur the expenses for vehicle purchase and

maintenance, in exchange for compensation from Defendants for such expenses.

191.    Defendants never compensated Plaintiff for any expenses incurred from the purchase and

maintenance of his vehicles, or the purchase of batteries, gasoline, or other fuel. As a result,

Defendants breached the implied contract by failing and refusing to pay Plaintiff a reasonable sum

under the afore-alleged facts.

192.    Defendants owe Plaintiff his overdue delivery vehicle costs.

## COUNT XIII.
### [Violations of the Internal Revenue Code—Fraudulent Filing of IRS Returns
### Brought on behalf of the Plaintiffs]

193.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

194.    26 USC § 7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

195.    Due to Defendants' violations of 26 USC § 7434, Plaintiffs are entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the Plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

## COUNT XIV.
### [Violations of the New York General Business Law—Deceptive Acts and Practices
### Brought on behalf of the Plaintiffs]

196.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

197.    NY General Business Law § 349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

198.    Due to Defendants' violations of NYGBS § 349, Plaintiffs are entitled to recover from Defendants, jointly and severally, his actual damages or fifty dollars ($50), whichever is greater, or both such actions.

199.    Plaintiff demands the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporations to recover wages owed as employees of the corporations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, and on the behalf of the FLSA Collective and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a.      Certification of this case as a collective action pursuant to FLSA;

b.      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action members;

c.      A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

d.      An injunction against Corporate Defendants, their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

e.      An award of compensatory damages equal to the unpaid minimum wage, overtime, and spread of hours due to Plaintiffs and the Collective under FLSA, and to Plaintiff and the Class under the NYLL, plus punitive and/or liquidated damages equal to compensatory damages under the New York Wage Theft Prevention Act for Defendants' willful failure to pay minimum wage, overtime, and spread of hours;

f.      Up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a Time of Hire notice detailing rates of pay and payday;

g.      Up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide paystubs that list employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

h.      Reimbursement of reasonable out-of-pocket costs sustained by Plaintiff and similarly situated delivery couriers in the purchase, maintenance, and repair of their delivery vehicles in direct service of Defendants;

i.      An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

j.      The costs and disbursements of this action;

k.      An award of prejudgment and post-judgment interest;

l.      Providing that if any amounts remain unpaid upon the expiration of ninety (90) days following the issuance of judgment, or ninety (90) days after expiration of the time to appeal with no appeal then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent (15%), as required by NYLL § 198(4).

m.      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: September 17, 2017                    TROY LAW, PLLC
       Flushing, NY                          *Attorneys for the Plaintiff, proposed FLSA*
                                             *Collective and potential Rule 23 Class*


                                             /s/ John Troy_____

John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel (718) 762-1324
johntroy@troypllc.com