UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENXIANG ZHANG and XINHUI ZHANG *on behalf of themselves and other persons similarly situated*,

                              Plaintiffs,

        -against-

HIRO SUSHI AT OLLIE'S INC. d/b/a Hiro Sushi at Ollie's, FREEDOM PLACE REST LLC d/b/a Hiro Sushi at Ollie's, 39 WEA FOOD GROUP, INC. d/b/a Mah Jong Chinese Kitchen, TAO RONG a/k/a Cindy Rong, and YI LU.

                              Defendants.

17cv7066 (DF)

**MEMORANDUM AND ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

        In this action brought under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), plaintiffs Genxiang Zhang and Xinhui Zhang (together, "Plaintiffs") claim, *inter alia*, that they were denied minimum wages and overtime pay while employed by defendants Hiro Sushi at Ollie's Inc., d/b/a Hiro Sushi at Ollie's ("Hiro Sushi at Ollie's"), Freedom Place Rest LLC, d/b/a Hiro Sushi at Ollie's ("Freedom Place"), 39 WEA Food Group, Inc., d/b/a Mah Jong Kitchen ("39 WEA"), Tao Rong, a/k/a Cindy Rong ("Rong"), and Yi Lu ("Lu") (collectively, "Defendants").[1]  Currently before this Court, to which this case has been referred for general pretrial supervision (*see* Dkt. 21), is a motion made by Plaintiffs pursuant to Section 216(b) of the FLSA, by which Plaintiffs seek conditional certification of a collective of similarly situated employees and ask this Court to facilitate Court-authorized notice, so that the

_____

[1] Although the Complaint also named certain additional defendants, Plaintiffs voluntarily dismissed their claims against those defendants in April 2018.  (*See* Dkt. 32.)

similarly situated employees may opt into Plaintiffs' collective action.  For the reasons discussed below, Plaintiffs' motion (Dkt. 37) is granted in part and denied in part.

## BACKGROUND

### A.    Factual Background

According to Plaintiffs' Complaint, plaintiff Genxiang Zhang was employed by Defendants as a deliveryman at two of Defendants' restaurants:  first at Mah Jong Chinese Kitchen, and then at Hiro Sushi at Ollie's (*see* Complaint, dated Sept. 17, 2017 ("Compl.") (Dkt. 1) ¶¶ 54, 67), and plaintiff Xinhui Zhang was employed as an "oil and water wok" at Hiro Sushi at Ollie's (*id.* ¶ 86).  Plaintiffs plead that Mah Jong Chinese Kitchen and Hiro Sushi at Ollie's are both engaged in interstate commerce, have gross annual sales in excess of $500,000, and have "purchased and handled goods moved in interstate commerce" (*id.* ¶¶ 12, 13, 16, 17, 21, 22), bringing them within the coverage of the FLSA, *see* 29 U.S.C. §§ 206(a), 207(a)(1). Additionally, Plaintiffs plead that defendant Rong is the "principal day-to-day manager" of both restaurants (*id.* ¶ 25), and that defendant Lu, Rong's daughter, is the cashier at Hiro Sushi at Ollie's and is "actively involved in the day-to-day operations" there (*id.* ¶ 28).  Plaintiffs allege that Rong and Lu both qualify as "employers" under the FLSA, as they allegedly "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records."  (*Id.* ¶¶ 24, 26, 27, 29.)

Based on the Complaint (as amplified by the Declarations that Plaintiffs have submitted in connection with Plaintiffs' motion for conditional certification of an FLSA collective), the nature of Plaintiffs' work for Defendants, as well as their claimed hours and pay, is summarized below.

2

### 1.   **Plaintiff Genxiang Zhang**

Although defendant 39 WEA has submitted a Declaration from one of its owners, Ariey Nussbaum ("Nussbaum"), stating that 39 WEA only did business as Mah Jong Chinese Kitchen from June through December of 2015 (Declaration of Ariey Nussbaum in Opposition to Plaintiffs' Motion for Collective Certification, dated July 9, 2018 ("Nussbaum Decl.") (Dkt. 42-1) ¶ 1), plaintiff Genxiang Zhang claims that he worked as a deliveryman at Mah Jong Chinese Kitchen from April to August of 2015 (Compl. ¶ 9; *see also* Affidavit of Genxiang Zhang in Support of Motion for Conditional Collective Certification, sworn to June 27, 2018 (Dkt. 38-4) ("Genxiang Zhang Aff.") (attached as Exhibit 4 to the Declaration of John Troy in Support of Motion for Conditional Collective Certification, dated June 27, 2018 ("Troy Decl.") (Dkt. 38)) ¶ 3.  Genxiang Zhang further claims that he worked as a deliveryman at Hiro Sushi at Ollie's from August 2015 to approximately October 31, 2017.  (Genxiang Zhang Aff. ¶ 10.)[2]

With respect to his time at Mah Jong Chinese Kitchen, Genxiang Zhang states that, for nine of the weeks that he worked there, he worked 11 hours per day, six days per week, for a total of 66 hours per week, and that, for the remaining four weeks that he worked there, he worked 11 hours per day, five days a week, for a total of 55 hours per week.  (Genxiang Zhang Aff. ¶¶ 4, 5.)  He further states that he was given two 10-minute breaks per work day, but that, if a delivery order came in, he had to "cut [his] break short and go do the delivery."  (*Id*. ¶ 6.)  He also states that, in addition to his "regular duties," he had to spend more than two hours per day

---

[2] While the Complaint, dated September 17, 2017, indicates that, as of that date, Genxiang Zhang was still employed at Hiro Sushi at Ollie's (Compl. ¶ 10), Genxiang Zhang's Affidavit states that his employment ended there on October 31, 2017 (Genxiang Zhang Aff. ¶ 3).

moving materials and supplies between Mah Jong Chinese Kitchen and Hiro Sushi at Ollie's. (*Id.* ¶ 7.)

For his work at Mah Jong Chinese Kitchen, Genxiang Zhang asserts that he was paid $6.00 per hour (*id.* ¶ 14; *see also* Compl. ¶ 63), but that he was not paid for all the hours that he worked (Genxiang Zhang Aff. ¶ 18; *see also* Compl. ¶ 62 (alleging that he "was paid only for eight (8) hours each day")). He further asserts that he was not informed that, in paying him, Defendants intended to take a tip credit toward the minimum wage, and he also states that Defendants retained 15 percent of his credit-card tips. (Genxiang Zhang Aff. ¶ 8.) Moreover, he asserts that, when an order for delivery came in at the end of his shift, he had to clock out before making the delivery, and was not paid for the time it took to make the delivery. (*Id.* ¶ 9.)

With respect to his time at Hiro Sushi at Ollie's, Genxiang Zhang asserts that he worked a schedule of six hours per day for three days of the week, and four hours per day for two days of the week. (*Id.* ¶ 11-12.) He states that he was given one 10-minute meal break per work day, but again explains that, if a delivery order came in, he had to "cut [his] break short and go do the delivery." (*Id.* ¶ 13.) He asserts that, during most of this time at Hiro Sushi at Ollie's (beginning on December 26, 2015), he was paid $7.50 per hour, but again states that he was not paid for all of the hours that he worked. (*Id.* ¶ 18; Compl. ¶ 79.)

Overall, Genxiang Zhang claims that, throughout his employment at both Mah Jong Chinese Kitchen and Hiro Sushi at Ollie's, he was not paid the required minimum wage (Genxiang Zhang Aff. ¶¶ 14, 16), was not paid for all of the hours that he worked (*id.* ¶ 18), was not paid spread-of-hours pay (*id.* ¶ 19), and was not fully compensated for his overtime hours (*id.* ¶ 18).

4

2.      **Plaintiff Xinhui Zhang**

Although defendant Rong has submitted an Affidavit, in which she states that Hiro Sushi

at Ollie's was formed on August 17, 2015 (Affidavit in Opposition to Motion of Plaintiffs for

Conditional Collective Certification, sworn to July 10, 2018 ("Rong Aff.") (Dkt. 40) ¶ 3 & Ex. A

(purported copy of incorporation record)), plaintiff Xinhui Zhang alleges that he worked at Hiro

Sushi at Ollie's from March to May of 2015, as an "[o]il [w]ok and [w]ater [w]ok" (Affidavit of

Xinhui Zhang in Support of Motion for Conditional Collective Certification, sworn to June 20,

2018 ("Xinhui Zhang Aff.") (Dkt. 38-5) (attached as Exhibit 5 to the Troy Decl.) ¶ 3).

Xinhui Zhang describes his work as having involved kitchen prep, including cutting beef,

pork, and chicken, washing and cutting vegetables, peeling shrimp, and frying pork ribs.  (*Id.*

¶ 5-6.)  He states that he worked 11 hours per day, six days per week, for a total of

approximately 72 hours a week.  (*Id.* ¶ 4.)  He asserts that his shifts had "a (15) fifteen-minute

break for lunch during the day" (*id.* ¶ 4), but later asserts that "there was no lunch break" and

that he had to eat lunch while working (*id.* ¶ 7).  For all of this work, he states that he was paid a

flat amount of $2,300 per month.  (*Id.* ¶ 8.)

Overall, Xinhui Zhang claims that, throughout his employment, he was not paid the

required minimum wage (*id.* ¶ 8), was not paid for all the hours that he worked (*id.* ¶ 10), and

was not fully compensated for his overtime hours (*id.* ("Defendants failed to pay me extra for the

hours worked over 40 hours per work week.")).

B.      **Procedural History**

1.      **The Pleadings**

Plaintiffs filed their Complaint on September 17, 2017, asserting claims under both the

FLSA and the NYLL.  (*See* Compl.)  Defendants Hiro Sushi at Ollie's, Rong, and Lu answered

the Complaint on April 13, 2018 (Dkt. 28), and defendants Freedom Place and 39 WEA

answered the Complaint on April 28, 2018 (Dkt. 33).

### 2.   Plaintiffs' Motion

On June 27, 2018, Plaintiffs filed their motion for conditional certification of an FLSA

collective.  (*See* Notice of Motion for Conditional Collective Certification, dated June 27, 2018

(Dkt. 37).)  By their motion, Plaintiffs seek to proceed in this case on behalf of themselves and

all non-exempt, non-managerial employees who worked for Hiro Sushi at Ollie's and Mah Jong

Chinese Kitchen from September 17, 2014 to the present.  (Troy Decl. ¶ 2.)

In support of their motion, Plaintiffs have submitted a legal memorandum (Plaintiffs'

Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification, dated June

27, 2018 ("Pl. Mem.") (Dkt. 39)), and they have each submitted an affidavit, as cited above.

Defendants Hiro Sushi at Ollie's, Rong, and Lu filed an opposition memorandum on July

11, 2018 (Memorandum of Law on Behalf of Defendants Hiro Sushi at Ollie's Inc. d/b/a Hiro

Sushi at Ollies, Tao Rong a/k/a Cindy Rong and Yi Lu in Opposition to Motion for Conditional

Collective Certification ("Hiro Sushi Mem.") (Dkt. 41)), accompanied by the Rong Affidavit,

cited above.  Defendants Freedom Place and 39 WEA similarly filed an opposition

memorandum, also on July 11, 2018 (Memorandum of Law on Behalf of Defendants Freedom

Place Rest. LLC and 39 WEA Food Group, Inc. in Opposition to Plaintiffs' Motion for

Conditional Collective Certification ("Freedom Place Mem.") (Dkt. 42)), accompanied by the

Nussbaum Affidavit, cited above.

On July 25, 2018, Plaintiffs filed separate replies to the two opposition memoranda

submitted by Defendants.  (Plaintiffs' Memorandum of Law in Reply to Brief on Behalf of

Defendants Freedom Place Rest. LLC and 39 WEA Food Group, Inc. ("Pl. Reply Mem. to

Freedom Place") (Dkt. 44); Plaintiff's Memorandum of Law in Reply to Brief on Behalf of

Defendants Hiro Sushi at Ollie's Inc, d/b/a/ Hiro Sushi at Ollie's, Tao Rong a/k/a Cindy Rong,

and Yi Lu ("Pl. Reply Mem. to Hiro Sushi") (Dkt. 45).)

### 3.   The Deposition of Plaintiff Xinhui Zhang, and the Surreply Papers Submitted Thereafter, with Leave of Court

On September 24, 2018, after this motion was fully briefed, Defendants conducted the

deposition of plaintiff Xinhui Zhang.  At that deposition, Xinhui Zhang gave testimony that, in

ways relevant to this motion, appeared to conflict with portions of the Affidavit that he had

submitted to the Court in support of the motion, specifically with respect to the extent of his

knowledge as to the hours worked, and pay received, by other workers employed by Defendants.

As a result, Defendants requested permission from this Court to file sur-reply papers, challenging

the veracity of Xinhui Zhang's Affidavit (Dkts. 49, 51), and this Court granted that request

(Dkts. 50, 54).

On November 6, 2018, defendants Freedom Place and 39 WEA filed a sur-reply brief

(Sur-Reply Brief on Behalf of Defendants Freedom Place Rest LLC and 39 WEA Food Group,

Inc. in Opposition to Plaintiffs' Motion for Conditional Collective Certification, dated Nov. 6,

2018 ("Freedom Place Sur-Reply Mem.") (Dkt. 53)), together with an attorney Declaration,

placing before this Court certain deposition excerpts and email correspondence between counsel

(Declaration of Raymond Nardo, dated Nov. 6, 2018 ("Nardo Decl") (Dkt. 52).)  On

November 12, 2018, defendants Hiro Sushi at Ollie's, Rong, and Lu also filed a sur-reply brief

(Sur-Reply Brief on Behalf of Defendants Hiro Sushi at Ollie's Inc. d/b/a Hiro Sushi at Ollie's,

Tao Rong a/k/a Cindy Rong and Yi Lu in Opposition to Plaintiff's Motion for Conditional

Collective Certification, dated Nov. 12, 2018 ("Hiro Sushi Sur-Reply Mem.") (Dkt. 55)), with

certain exhibits attached.[3]

On November 13, 2018, Plaintiffs filed a response, consisting of a memorandum and

attached exhibits.  (Plaintiff's Response to Defendants['] Motion for Sur-Reply in Opposition to

Plaintiffs' Motion for Conditional Collective Certification, dated Nov. 12, 2018 ("Pl. Resp. to

Sur-Reply") (Dkt. 56))

<u>**DISCUSSION**</u>

**I.**    <u>**APPLICABLE LEGAL STANDARDS**</u>

**A.**    <u>**The FLSA and Section 216(b)**</u>

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum

wage for the first 40 hours that he or she worked in a given work week.  29 U.S.C. § 206(a).

Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, any hours exceeding 40

hours per week), at a "rate not less than one and one-half times the regular rate at which [the

employee] is employed."  *Id.*, § 207(a)(1); *see also, e.g.*, *Benitez v. Demco of Riverdale, LLC*,

---

[3] It is generally inappropriate for a litigant to attach exhibits to a legal memorandum, which cannot serve to authenticate the submitted evidence.  *See, e.g.*, *AIU Insurance Co. v. TIG Insurance Co.* No. 07cv7052 (SHS) (HBP), 2012 WL 8138275, at *5 (S.D.N.Y. Aug. 16, 2012) ("Where a party wishes to have a court consider documents which are not yet part of the record, the documents must be attached to and authenticated by an appropriate affidavit and the affiant must be a competent witness through whom the documents would be received into evidence at trial."  (internal quotation marks and citation omitted)), *report and recommendation adopted,* 934 F. Supp. 2d 594 (2013).  In this instance, however, Plaintiffs have not challenged the authenticity of the deposition transcript excerpts attached as an exhibit to the sur-reply brief of defendants Hiro Sushi at Ollie's, Rong, and Lu.   For this reason, this Court will consider those transcript excerpts, together with the excerpts submitted by defendants Freedom Place and 39 WEA (which were properly authenticated by an attorney Declaration).  Nonetheless, as discussed further below (*see infra*, at Section III), this Court will only consider this evidence, at this time, for the purpose of considering the extent to which conditional certification of an FLSA collective would be appropriate in this case, and not for the purpose of determining whether plaintiff Xinhui Zhang and/or his counsel should be sanctioned for purportedly submitting a false Affidavit to the Court.

No. 14cv7074 (CM), 2015 WL 3780019, at *2 (S.D.N.Y. June 15, 2015) (quoting Section

207(a)(1)).  "The statute of limitations under the FLSA is ordinarily two years, but it may be

extended to three years if the claim arises from a 'willful' violation."  *Yu G. Ke v. Saigon Grill,*

*Inc.*, 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (citing 29 U.S.C. § 255(a)).  To satisfy the

willfulness requirement, a plaintiff must demonstrate that the employer either acted knowingly or

"showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

(*Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).)

Section 216(b) of the FLSA allows employees to "recover unpaid minimum wages and/or

overtime compensation from an employer who violates the [FLSA's] provisions, and permits

such an action to be brought as a collective action."  *Summa v. Hofstra Univ.*, 715 F. Supp. 2d

378, 384 (E.D.N.Y. 2010).  Pursuant to Section 216(b),

> [a]n action . . . may be maintained against any employer . . . by any
> one or more employees for and in behalf of himself or themselves
> and other employees similarly situated.  No employee shall be a
> party plaintiff to any such action unless he gives his consent in
> writing to become such a party and such consent is filed in the
> court in which such action is brought.

29 U.S.C. § 216(b); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 320

(S.D.N.Y. 2007) (noting that employees can maintain a collective action against an employer

where the employees are (1) "similarly situated," and (2) give their consent to become a party in

writing).

There are three "essential features" of an FLSA collective action under Section 216(b).

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).

> First, in order to participate in a collective action, an employee
> must "opt-in," meaning the employee must consent in writing to
> join the suit and that consent must be filed with the court.  Second,
> the statute of limitations runs on each employee's claim until his
> individual Consent Form is filed with the court.  Third, to better
> serve the FLSA's "broad remedial purpose," courts may order
> notice to other potential similarly situated employees to inform
> them of the opportunity to opt-in the case.

*Id.* (*quoting Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 173 (1989)).

### B.   Standards for Conditional Certification

"Courts generally determine the appropriateness of class certification at two stages: first,

on the initial motion for conditional class certification, and second, after discovery." *Fasanelli*,

516 F. Supp. 2d at 321 (collecting cases).  On the initial, pre-discovery motion, a court

determines whether potential opt-in plaintiffs are similarly situated to any named plaintiffs,

based on the pleadings and affidavits submitted to the court.  *Id.*; *see also In re Penthouse*

*Executive Club Comp. Litig.*, No. 10cv01145 (NRB), 2010 WL 4340255, at *3 (S.D.N.Y.

Oct. 27, 2010).  If the court is satisfied that the "similarly situated" standard has been met, it will

authorize that notice be sent to potential opt-in plaintiffs.  *Fasanelli*, 516 F. Supp. 2d at 321.

After discovery is complete, the court will evaluate the full record before it, in order to determine

whether the opt-in plaintiffs are, in fact, similarly situated.  *Id.*  "If they are not, the class can be

decertified at that time and the claims of dissimilar 'opt-in' plaintiffs dismissed without

prejudice."  *Id.*

In light of the two-step process, "[t]he burden imposed at [the] first conditional

certification stage is minimal."  *Amador v. Morgan Stanley & Co.*, No. 11cv4326 (RJS), 2013

WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013) (internal quotation marks and citation omitted;

second alteration in original).  As discussed further below, the burden at this stage is "low"

because "the purpose of this first stage is merely to determine *whether* 'similarly situated'

10

plaintiffs do in fact exist." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citations

omitted; emphasis in original).  It is not until the second stage, upon a "full review of the factual

record developed during discovery," that the court determines "whether opt-in plaintiffs are

*actually* 'similarly situated.'"  *Amador*, 2013 WL 494020, at *4 (internal quotation marks and

citation omitted; emphasis in original).  At bottom, while conditional certification is not

automatic, and while a plaintiff's showing in support of certification cannot be entirely

conclusory, *see, e.g.*, *Morales v. Plantworks, Inc.*, No. 05cv2349 (DC), 2006 WL 278154, at

*2-3 (S.D.N.Y. Feb. 2, 2006), courts have recognized that the standard at this first stage is

"'fairly lenient,' [and thus] courts applying it 'typically grant[ ] conditional certification,'"

*Amador*, 2013 WL 494020, at *3 (quoting *Malloy v. Richard Fleischman & Assocs. Inc.,* No.

09cv332 (CM), 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009)).

     "Neither the FLSA nor its implementing regulations define 'similarly situated.'"  *Summa*,

715 F. Supp. 2d at 385 (citing *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y.

1997)).  Courts in this Circuit have held that named plaintiffs can meet their burden by making a

modest factual showing demonstrating that they and potential opt-in plaintiffs together were

victims of a common policy or plan that violated the law.  *Myers*, 624 F.3d at 554-55; *see also*

*Summa,* 715 F. Supp. 2d at 385.  Indeed, the relevant question "is not whether [the] [p]laintiffs

and [potential opt-in members are] identical in all respects, but rather whether they were

subjected to a common policy."  *Raniere v. Citigroup Inc*., 827 F. Supp. 2d 294, 323 (S.D.N.Y.

2011), *rev'd on other grounds*, 533 F. App'x 11 (2d Cir. 2013) (internal quotation marks and

citation omitted).  The fact that a potential class may involve employees in "a variety of diverse

positions . . . does not undermine the conditional certification of the class since 'under [S]ection

216(b) parties may be similarly situated, despite not occupying the same positions or performing

the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.'" *Summa*, 715 F. Supp. 2d at 390 (quoting *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009)); *see also Lynch*, 491 F. Supp. 2d at 369 (noting that "any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification" because the court may later, after having the benefit of full discovery, "decertify the class or divide it into subclasses, if appropriate" (internal quotation marks and citations omitted)).

Further, at this initial procedural stage, the court does not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) (quoting *Hypolite v. Health Care Servs. of N.Y., Inc.*, 256 F. Supp. 3d 485, 489 (S.D.N.Y. 2017)); *see also Lynch,* 491 F. Supp. 2d at 368 ("Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." (citations omitted)); *Bijoux v. Amerigroup N.Y., LLC*, No. 14cv3891 (RJD) (VVP), 2015 WL 4505835, at *3 (E.D.N.Y. July 23, 2015), *report and recommendation adopted*, 2015 WL 5444944 (Sept. 15, 2015) (At this stage "the court's task is only to conclude whether there *may be* other similarly situated workers, and [the court] need not evaluate the underlying merits of a plaintiff's claims" (internal quotation marks and citations omitted; emphasis in original)).  Additionally, as "the initial class certification determination [is] made . . . on preliminary documents such as pleadings and affidavits," the determination is "necessarily [based on] unproven allegations." *Fasanelli*, 516 F. Supp. 2d at 321-22 (rejecting defendant's arguments that declarations provided by plaintiff should not be relied upon because they contained "inadmissible hearsay, speculation, personal beliefs and conclusions," and granting conditional certification).

Even so, to meet his or her burden on a motion for conditional certification, a plaintiff must do more than make unsupported assertions. Rather, a plaintiff must make a facially adequate showing that putative members of the collective are similarly situated "with respect to the FLSA violations [the named plaintiff] allege[s] – not other factors." *Bijoux*, 2015 WL 4505835, at *3 (noting that a modest factual showing cannot rest on unsupported assertions, but that a plaintiff can meet his or her burden by supplementing the pleadings with other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members (citations omitted)).

### C.    Court-Authorized Notice

Once a court determines that a named plaintiff has demonstrated that he or she is similarly situated to other employees of the defendant with respect to the defendant's alleged unlawful policy for paying minimum wages and/or overtime pay, and has thus satisfied his or her burden for initial certification of a collective action, the court may proceed to authorize issuance of a notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit. *Lynch,* 491 F. Supp. 2d at 367. "Although Section 216(b) does not explicitly address court-authorized notice, 'it is well settled that district courts have the power to authorize an FLSA plaintiff to send such notice to other potential plaintiffs.'" *Grant v. Warner Music Grp. Corp.*, No. 13cv4449 (PGG), 2014 WL 1918602, at *2 (S.D.N.Y. May 13, 2014) (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003); additional citations omitted)).

Indeed, as the statute of limitations does not toll for opt-in plaintiffs until they consent to appear, *see Lynch*, 491 F. Supp. 2d at 371, courts will "routinely approve court-authorized notice in order to ensure that the rights of potential claimants do not expire during the discovery

process." *Grant*, 2014 WL 1918602, at *2; *see also Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., No.* 12cv265 (PAE), 2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012) ("[C]ourt-authorized notice is appropriate[ ] to prevent erosion of claims due to the running statute of limitations. . . .").

> [C]ourt-supervised notice is the preferred method for managing the notification process for several reasons: it avoids "multiplicity of duplicative suits;" it allows the court to set deadlines to advance the disposition of an action; it furthers the "wisdom and necessity for early judicial intervention" in multi-party actions; and it protects plaintiffs' claims from expiring under the statute of limitations.

*Lynch,* 491 F. Supp. 2d at 367 (quoting *Hoffmann-La Roche*, 493 U.S. at 171-72).

"[T]he form and content of the notice" should be "approved by the [c]ourt prior to mailing," in order to prevent "after-the-fact disputes between counsel" regarding the form and manner of the notice and the opt-in plaintiffs' consent form. *Krueger v. New York Tel. Co.*, No. 93cv0178 (LMM), 1993 WL 276058, at *3 (S.D.N.Y. July 21, 1993) (citing *Hoffmann-La Roche*, 493 U.S. at 170). As "neither the FLSA nor the courts 'have specifically outlined what form court-authorized notice should take,'" *Amador*, 2013 WL 494020, at *9 (quoting *Fasanelli*, 516 F. Supp. 2d at 323), the content of the notice is left to the court's broad discretion, *see Fasanelli*, 516 F. Supp. 2d at 323 (citing *Hoffmann-La Roche*, 493 U.S. at 170, and noting that "[t]he Supreme Court has abstained from reviewing the contents of a proposed notice under § 216(b), noting that such 'details' should be left to the broad discretion of the trial court"). When exercising discretion, courts should consider the overarching policies of the notice provisions of Section 216(b), such policies which include achieving judicial efficiency and lowering individual costs for plaintiffs. *Fasanelli*, 516 F. Supp. 2d at 323. "[T]hese benefits 'depend on employees receiving accurate and timely notice concerning the pendency of the

collective action, so that they can make informed decisions about whether to participate.'" *Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

## II.   PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A PROPOSED FLSA COLLECTIVE

As set out above, the question for this Court on Plaintiffs' motion for conditional certification of an FLSA collective focuses "on whether the proposed plaintiffs are 'similarly situated' . . . with respect to their allegations that the law has been violated." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citation omitted). In their Complaint, Plaintiffs purport to bring this action individually and on behalf of "all other current and former non-exempt employees" who were employed by the Defendants during the statute of limitations period, and who were not properly paid under FLSA. (Compl. ¶ 121.) In the Plaintiffs' motion for conditional certification, the proposed class is defined as current and former employees who "performed work as non-exempt, non-managerial employees from September 17, 2014 to present." (Troy. Decl. ¶ 2.)

While this Court finds it appropriate to grant conditional certification of an FLSA collective here, this Court will not permit as broad a collective as Plaintiffs request. While Plaintiffs have identified certain categories of workers that are similarly situated to them with respect to Defendants' allegedly unlawful pay practices under the FLSA, Plaintiffs have not made such a showing with respect to all "non-exempt, non-managerial employees." The categories of workers that Plaintiffs have identified and seek to include in their collective will be discussed below.

As a preliminary matter, defendant Rong argues that plaintiff Genxiang Zhang cannot be considered similarly situated to other employees at Hiro Sushi at Ollie's because, Rong contends, (1) Genxiang Zhang only worked part-time, whereas other workers worked full-time; and (2) he

signed a release of all claims stemming from his employment at Hiro Sushi at Ollie's in October 2017, and no other employees (including any other delivery employees) have signed similar releases.  (Rong Aff. ¶¶ 10, 14-15.)  The number of hours that Genxiang Zhang worked is a factual dispute which would be inappropriate for this Court to decide at this procedural stage. *Shillingford*, 293 F. Supp. 3d at 407.  As for the purported release of claims, the release proffered by Rong (Rong Aff, Ex. D) bears a date of October 2017, after the Complaint in this action was filed (*see* Compl. (filed September 17, 2017)).  As, in this Circuit, parties to an FLSA action may not settle their FLSA claims without judicial approval, *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199, 206 (2d Cir. 2015), and as the purported release of claims by Genxiang Zhang has not been approved by the Court, it cannot be viewed as effective, and thus it has no bearing on the question of whether a collective should be conditionally certified.

Defendants also argue that Xinhui Zhang should not be considered similarly situated to employees at Hiro Sushi at Ollie's because he attests that he worked for Hiro Sushi at Ollie's from March 1, 2015 to May 31, 2015 (Xinhui Zhang Aff. ¶ 3), while Defendants contend that Hiro Sushi at Ollie's did not exist until August 17, 2015 (Hiro Sushi Mem., at 2 (citing Rong Aff., Ex. A)).  This is another factual dispute that this Court should not address at this stage.

As these threshold arguments advanced by Defendants do not preclude conditional certification, this Court will proceed to determine whether Plaintiffs have adequately shown that the various categories of employees identified in Plaintiffs' motion were similarly situated to either of them, with respect to any common policies of Defendants that allegedly violated the FLSA.

A.    **Employees at Hiro Sushi at Ollie's**

1.    **Delivery Workers**

At this stage, this Court concludes that Plaintiffs have met their burden of making a modest factual showing that, during the proposed period of the collective, delivery workers at Hiro Sushi at Ollie's were similarly situated with respect to the FLSA violations alleged by the Plaintiffs.

Plaintiff Genxiang Zhang asserts that he worked at Hiro Sushi at Ollie's as a deliveryman and provides a detailed description of the hours he has worked, the manner in which he was paid, and the amount of his wages.  (Genxiang Zhang Aff. ¶¶ 11, 12, 13, 14, 15.)  Based on these descriptions, he contends that he was not compensated at the required minimum wage, was not notified that Defendants intended to take tip credit toward the minimum wage and had a percentage of his credit-card tips retained by Defendants, was not paid for all the hours he worked, was not fully paid his spread-of-hours pay, and was not fully compensated for his overtime hours.  (*Id.* ¶¶ 14, 15, 16, 18.)  Based on such descriptions, this Court "may infer" that other delivery workers "worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA."  *Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17cv273 (LAP), 2018 WL 1737726, at *3 (S.D.N.Y. Mar. 26, 2018) (quoting *She Jian Guo v. Tommy's Sushi Inc.*, No. 14cv3946 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014)); *see also Cheng Xia Wang v. Shun Lee Palace Restaurant, Inc.*, No. 17cv00840 (VSB), 2018 WL 3155835, at *4 (S.D.N.Y. June 28, 2018) (finding that certification was proper for all delivery persons based on the experience of the named plaintiffs, who were themselves delivery persons).

Furthermore, Genxiang Zhang has described conversations that he had with several other current and former delivery workers at Hiro Sushi at Ollie's, including employees identified as

17

Weiting Zhao, Lao Er, Shen, Li, and Wang. [4]  (Genxiang Zhang Aff. ¶¶ 22, 25-43.)  Based on

these conversations, Genxiang Zhang attests to his understanding that these employees were paid

at the same rate as he was, below the minimum wage, and that they also were not paid

spread-of-hours pay.  (Genxiang Zhang Aff. ¶¶ 33, 35, 37, 41, 43.)  Courts generally find

affidavits from named plaintiffs, attesting to their personal knowledge that coworkers were

subject to similar employment practices as they were, to be sufficient to certify collective

actions.  *See Guo Qing Wang v. H.B. Rest. Grp., Inc*., No. 14cv813 (CM), 2014 WL 5055813, at

*4 (S.D.N.Y. Oct. 7, 2014) (collecting cases).  Therefore, Genxiang Zhang's assertions regarding

his conversations with other delivery workers further bolster this Court's determination that it is

appropriate to certify a collective including delivery workers at Hiro Sushi at Ollie's.[5]

---

[4]  Genxiang Zhang identifies "Shen," "Li," and "Wang" only by their surnames.  He also
identifies "a couple of [other] people," in addition to the ones described above, working as
delivery persons, but these individuals remain unnamed.  (Genxiang Zhang Aff. ¶¶ 36, 39, 42.)

[5]  Although, in his Affidavit in support of Plaintiffs' motion, plaintiff Xinhui Zhang states
that he, too, has spoken with delivery workers at Hiro Sushi at Ollie's, and is therefore aware that
such workers were not paid below the minimum wage and were not paid for all hours worked
(*see* Xinhui Zhang Aff. ¶¶ 28-30), the reliability of this Affidavit has been called into question
by Defendants in their sur-reply submissions.  As to delivery workers in particular, Xinhui Zhang
states, in his Affidavit, that he knew a particular delivery person who was Shanghainese (*id.*
¶ 28), with whom he "use[d] to communicate" – "often speak[ing] about the extra hours and
pay" (*id.* ¶ 30).  At his deposition, however, when asked if he "ever talk[ed] to any of the
delivery people about the hours they worked or how they were paid," Xinhui Zhang answered,
"No."  (Hiro Sushi Sur-Reply Mem., Ex. B, at 12:2-6.)  In light of this seeming contradiction,
this Court does not rely on any statements in Xinhui Zhang's Affidavit regarding his supposed
knowledge of the hours or pay of delivery workers – but rather only on the statements of his
co-plaintiff, Genxiang Zhang – in reaching its finding that delivery workers at Hiro Sushi at
Ollie's should be included in an FLSA collective.

## 2.     **"Oil Woks," "Water Woks," and "Fry Woks"**

Plaintiffs have also met their burden of showing that "oil woks," "water woks," and "fry woks" at Hiro Sushi at Ollie's were similarly situated with respect to the FLSA violations Plaintiffs allege.

Plaintiff Xinhui Zhang alleges that he was employed as an oil wok and a water wok at Hiro Sushi at Ollie's.  (Xinhui Zhang Aff. ¶ 3.)  He has provided detailed descriptions of his work duties, hours, and payment, and asserts that he was not paid the required minimum wage, was not paid for all the hours he worked, and was not fully compensated for his overtime hours. (*Id*. ¶¶ 8-10.)  As discussed above, this is sufficient to justify the inclusion of oil woks and water woks in an FLSA collective.  *See, e.g.*, *Weng*, 2018 WL 1737726, at *3.

As for fry woks, Xinhui Zhang attests, in his Affidavit, that a fry wok named Lambo – whom he describes as a "close friend," with whom he rode the subway home (Xinhui Zhang Aff. ¶¶ 14, 26) – told him that he worked from 11:30 a.m. to 11:00 p.m., six days per week, and was also paid a flat rate without full compensation for his overtime hours (*id*. ¶¶ 14, 23-26).  While the transcript excerpts submitted by Freedom Place and 39 WEA suggest that, at his deposition, Xinhui Zhang testified that he did now know the pay rates or amounts paid to employees other than himself (*see* Nardo Decl., Ex. 2, at 57:18-58:9), this is not in direct contradiction to the statements made in his Affidavit regarding Lambo, as he merely indicates there that he was aware that Lambo was paid a "flat rate," without stating that he was aware of the specific rate or amount of pay that Lambo received (*see* Xinhui Zhang Aff. ¶ 14; *see also id.* ¶ 24 (stating that Lambo was paid more than Xinhui Zhang because "a Fry Wok is more important than a Water Wok at the restaurant," but, again, not stating any particular rate of pay that Lambo received)).

Xinhui Zhang's deposition testimony, may, however, have been inconsistent with his Affidavit, with regard to his knowledge of Lambo's work schedule. In his Affidavit, Xinhui Zhang sets out knowledge of Lambo's work schedule (Xinhui Zhang Aff. ¶ 24), but a deposition transcript excerpt presented to this Court suggests that he testified at his deposition that he did not know the work schedules of any employees other than himself (*see* Nardo Decl., Ex. 2, at 58:10-15). This Court notes, however, that it has not been provided with a full transcript of the deposition, and it appears that Defendants may have omitted, from their submissions, the portions where Xinhui Zhang testified specifically about Lambo. (*See* Hiro Sushi Sur-Reply Mem., Ex. 2, at 10:14-18 (Q. "Am I correct in recollecting your testimony, that you said you were not familiar with the hours of employment and pay of other employees; is that correct *except for Lambo maybe*?" A. I don't know, correct. That's correct." (emphasis added)).) In light of this ambiguity, this Court finds that Defendants have not adequately rebutted the statements made by Xinhui Zhang, in his Affidavit, as to how Lambo was similarly situated to him, with respect to the FLSA violations alleged in the Complaint.

Accordingly, this Court concludes that Plaintiffs have met their "light burden of making a 'modest factual showing'" that Xinhui Zhang and other oil woks, water woks, and fry woks "were victims of a common policy or plan that violated the law." *Sanchez v. Gansevoort Mgmt. Grp, Inc.*, No. 12cv75 (KBF), 2013 WL 208909, at *1 (S.D.N.Y. Jan. 10, 2013) (quoting *Hoffman,* 982 F. Supp. at 261). This Court therefore finds it appropriate to certify a collective including oil woks, water woks, and fry woks at Hiro Sushi at Ollie's.

### 3.   Dishwashers

In his Affidavit, Xinhui Zhang also identifies a dishwasher with whom, he states, he has conversed. (Xinhui Zhang Aff. ¶¶ 31-32.) He attests that this dishwasher worked from

11:00 a.m. to 11:00 p.m., and states, "his pay is less than mine and [he] is paid once a month."
(*Id.*)  In this instance, however, Xinhui Zhang's deposition testimony appears to be squarely at odds with the statements contained in his Affidavit, at least to the extent that he suggests, in his Affidavit, that he was made aware of the dishwasher's work hours or pay through a discussion with him.  In response to questioning at his deposition, Xinhui Zhang specifically testified that he had *not* spoken with the dishwasher.  (*See* Hiro Sushi Mem., Ex. 2, at 11:24-12:2 (Q.  "How about the dishwasher that worked; did you ever discuss with him the hours he worked?"  A.  "I have no idea.  We never talk.").)  As noted by Defendants, where such inconsistencies exist, they weigh against conditional certification.  (*See* Freedom Place Sur-Reply Mem., at 6 (citing, *inter alia*, *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 484 (S.D.N.Y. 2016) (denying conditional certification of a collective "based on self-serving declarations from the named [p]laintiffs that are contradicted by their own sworn deposition testimony")).)

Regardless of this disparity, though, this Court need not reach the question of whether Xinhui Zhang's deposition testimony undermines, to any degree, the statements made in his Affidavit regarding his knowledge of the dishwasher's hours or pay, as, even based on the Affidavit alone, the information provided is insufficient to warrant expanding the collective to include any dishwashers.  In short, even in his Affidavit, Xinhui Zhang does not attest to having knowledge regarding how many days per week the dishwasher worked, and, without this information, this Court cannot reasonably infer that this employee was underpaid, and thus similarly situated to Plaintiffs with regard to Defendants' alleged FLSA violations.

Accordingly, even though Plaintiffs' burden on this motion is modest, this Court finds that they have not made an adequate showing that dishwashers should be included in the FLSA collective.

### 4. Sushi Bar Chefs, Cantonese Chefs, and Any Soup Dumplings Preparers

In his Affidavit, Plaintiff Xinhui Zhang also attests to some information regarding the hours and duties of sushi bar chefs, Cantonese chefs, and "a woman who prepared soup dumplings."[6]  (Xinhui Zhang Aff. ¶¶ 16-22, 27.)  He provides information about the working schedules of these employees, but he does not attest to any knowledge about their pay, beyond asserting that one of the Cantonese chefs is paid more than he is.  (Xinhui Zhang Aff. ¶ 21.) Without more specific allegations regarding these workers' pay, this Court concludes – once again, without need to consider any potential inconsistencies between Xinhui Zhang's Affidavit and his deposition testimony – that Plaintiffs have not provided enough information to allow this Court to infer that sushi bar chefs, Cantonese chefs, or any soup dumplings preparers were similarly situated to the Plaintiffs with respect to the Defendants' alleged FLSA violations. Accordingly, this Court will not conditionally certify a collective that includes these categories of employees.  *See Weng*, 2018 WL 1737726, at *4 (denying collective certification with regard to wait staff when it was "unclear whether [waiter] was actually paid less than minimum wage or denied lawfully owed overtime pay").

### 5. Other Categories of Non-Exempt Workers

Plaintiffs have moved for conditional collective certification of all "non-exempt, non-managerial employees" of Defendants, saying, in their moving brief, that "[a]ll non-managerial employees of Defendants are similarly situated as they were victims of Defendants' widespread common policy of understating and underpaying their employees' overtime payment, and willfully paying less than minimum wages as required by the FLSA, whether tipped or non-

---

[6] In Plaintiffs' reply memorandum, Plaintiffs refer to this woman as the "Xiaolongtanbao (dumpling) Lady."  (Pl. Reply Mem. to Hiro Sushi, at 3.)

tipped."  (Pl. Mem., at 14.)  While Plaintiffs have identified other categories of workers at Hiro Sushi at Ollie's, such as waiters and cashiers, Plaintiffs have not provided any substantive information about these workers' hours and pay, beyond alleging knowledge that "it is Defendants' policy to not pay any employee at time and a half rate for their overtime hours." (Genxiang Zhang Aff., ¶ 22; *see also* Xinhui Zhang Aff. ¶ 13.)  These statements are too general and conclusory to permit even conditional certification of a collective that includes additional categories of workers.  *See Sanchez v. JMP Ventures, L.L.C.,* No. 13cv7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (plaintiff's "generalized allegations" regarding defendants' "common practices" were insufficient to permit certification).

  To justify including different categories of workers in an FLSA collective, a "modest but *job-specific* factual showing" is required.  *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. Nov. 18, 2015); *accord Shanfa Li v. Chinatown Take-Out Inc.,* No. 16cv7787 (JCM), 2018 WL 1027161, at *5 (S.D.N.Y. Feb. 21, 2018) (quoting *Yap*).  In *Yap*, while conditionally certifying a collective of deliverymen and chefs, the court rejected plaintiffs' contention that their allegations regarding those two categories of workers would "allow the [c]ourt to draw an 'inference' that [d]efendants 'failed to pay other employees such as wait staff, bussers, etc., their entitled overtime.'"  *Id.*  (record citation omitted).  Similarly, in *Colon v. Major Perry St. Corp.*, No. 12cv3788 (JPO), 2013 WL 3328223 (S.D.N.Y. July 2, 2013), the court conditionally certified a collective that included superintendents, but not handymen, where plaintiff's "affidavit offer[ed] only a brief sketch" regarding handymen and there was "no basis for concluding that these two groups were subject to the same policy," *id*. at *7.  Here, Plaintiffs have not even offered a brief sketch of the hours and compensation of groups of workers other than those discussed above.

As a job-specific showing is needed, and as Plaintiffs have provided no information to show that employees in categories other than those discussed above were subject to a common unlawful compensation policy, this Court has no basis to certify, even conditionally, a collective so broad as that of all non-exempt, non-managerial employees of Hiro Sushi at Ollie's. Accordingly, to the extent Plaintiffs seek to define the FLSA collective as including "all non-exempt employees" of Hiro Sushi at Ollie's, or, indeed, any job titles other than delivery workers, oil woks, water woks, and fry woks, Plaintiffs' motion for conditional certification is denied.

### B.    Employees at Mah Jong Chinese Kitchen

While, for the reasons discussed below, Plaintiffs have met their burden of making a modest factual showing that delivery workers at Mah Jong Chinese Kitchen were similarly situated to Plaintiffs with respect to Defendants' alleged FLSA violations, they have not adequately shown that any other employees working at Mah Jong Chinese Kitchen should also be included in the collective.

Plaintiff Genxiang Zhang asserts that he, himself, worked as a deliveryman at Mah Jong Chinese Kitchen, and gives a detailed description of his job duties, hours, and payment there. (Genxiang Zhang Aff. ¶¶ 3-9.)  He contends that he was not paid the required minimum wage, that he was not informed that Defendants intended to take tip credit toward the minimum wage and retained 15 percent of his credit-card tips, and that he was not paid for all the hours he worked.  (*Id*. ¶ 8-9, 14; Compl. ¶ 62-63.)  Based on such descriptions, the court "may infer" that other delivery workers at Mah Jong Chinese Kitchen "worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA."  *Weng*, 2018 WL 1737726, at *3.

24

Plaintiffs, however, have not provided any evidence regarding the employment of other categories of workers at Mah Jong Chinese Kitchen.  The only other workers described in Genxiang Zhang's Affidavit are described as having worked at Hiro Sushi at Ollie's (Genxiang Zhang Aff. ¶ 22), and Xinhui Zhang, who does not, himself, claim to have ever worked at Mah Jong Chinese Kitchen, has said nothing at all to suggest that he has any knowledge regarding the situation of any workers there.  Without additional evidence regarding other categories of workers at Mah Jong Chinese Kitchen, this Court has no basis to conclude that other categories of workers at that location were similarly situated to Plaintiffs respect to the Defendants' alleged FLSA violations.

Accordingly, while this Court finds it appropriate to certify a collective that includes delivery workers at Mah Jong Chinese Kitchen, it will not include, in the collective, all non-exempt employees at Mah Jong Chinese Kitchen.

III.     **SCOPE AND FORM OF COURT-AUTHORIZED NOTICE**

In light of the above rulings, the Proposed Notice of Pendency submitted by Plaintiffs (Troy Decl., Ex. 2) must be revised to some extent, consistent with this Court's Order, and as discussed below.

A.     **Appropriate Notice Period**

Given Plaintiffs' allegations of willful violation of the FLSA minimum wage and overtime provisions, this Court agrees with Plaintiffs that the relevant period for this collective should run from September 17, 2014 (*i.e.*, three years prior to the filing of this action) to the date of final judgment in the action.  While Defendants deny any willful violations, this is of no moment for purposes of defining the scope of the collective, *see Hamadou v. Hess Corp.*, 915 F.

Supp. 2d 651, 668 (S.D.N.Y. 2013) ("Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action.").

### B.    Appropriate Opt-In Period

Plaintiffs propose that this Court approve a 90-day opt-in period for potential plaintiffs who may wish to join the collective.  (*See* Proposed Notice of Pendency, Troy Decl., Ex. 2.) Defendants argue that the opt-in period should be 30 days, not 90 days.  (Freedom Place Mem., at 10.)  While courts have found a 90-day opt-in period warranted "in light of the frequent, long-term international travel of many of the prospective plaintiffs," *Fang v. Zhuang*, No. 10–CV–1290 (RRM)(JMA), 2010 WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010), Plaintiffs have not shown that this is the case here.  Setting a 60-day opt-in period, however, is consistent with the practice in this District, *see, e.g., Racey v. Jay-Jay Cabaret, Inc.*, No. 15cv8228 (KPF), 2016 WL 3020933, at *7 (S.D.N.Y. May 23, 2016) (finding that a 30-day opt-in period was too short "to effect notice on the potential opt-in plaintiffs" (internal formatting omitted)); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451-452 (S.D.N.Y. 2011) (collecting cases). Therefore, this Court will approve a 60-day opt-in period.

### C.    Equitable Tolling

Plaintiffs also request that the statute of limitations for potential plaintiffs' claims "be tolled for 90 days until the expiration of the [o]pt-[i]n period" because "unnecessary delays are of particular concern due to the FLSA's limitations period which continues to run until the potential class member opts in."  (Pl. Mem., at 6.)  Equitable tolling, however, is applicable only in "rare and exceptional circumstances."  *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)).

A "district court may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief." *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 355 (S.D.N.Y. 2017) (quoting *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014)).  In particular, some courts have tolled the statute of limitations for the claims of potential opt-in plaintiffs for the period of time that a motion for conditional certification has been *sub judice*, *see id.*, although it has also been held that delay by the court in deciding the motion will not justify equitable tolling, absent a showing that the litigants seeking to benefit from the tolling have acted diligently to protect their rights, *see Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 658 (S.D.N.Y. 2017).

In any event, several courts have "declined to apply equitable tolling where the delay, in their view, was not of such a magnitude as to warrant tolling." *Viriri,* 320 F.R.D. at 355; *see also Mark v. Gawker Media LLC*, No. 13cv4347 (AJN), 2014 WL 5557489, at *3 (S.D.N.Y. Nov. 3, 2014) (declining equitable tolling where 11 months had passed since the filing of the motion for conditional certification, and finding that "the time delay between the date [p]laintiffs filed the motion and its resolution . . . was not extraordinary" (internal quotation marks omitted)).  Courts have also found that a determination as to equitable tolling would be premature, prior to a showing that the claims of any potential opt-in would be barred as the result of a notice delay.  *See Whitehorn*, 767 F. Supp. 2d at 450 (finding that plaintiff's request to toll the statute of limitations was premature, as it was yet unclear whether or not any potential plaintiffs would be barred from the action due to a delay in notice).

In this case, Plaintiffs' motion for conditional certification was filed on June 27, 2018, but, because this Court allowed sur-reply so that plaintiff Xinhui Zhang's deposition testimony could be taken into account, the motion was not fully briefed until November 13, 2018.  Thus, there has been no substantial gap between the time the motion was fully ready for this Court's consideration and the date of this Order, and, even looking to the longer gap between the date when the motion was first filed and the date of its resolution, the delay here is markedly less than the 11-month delay in *Mark,* where the court declined to find equitable tolling.  *See Mark*, 2014 WL 5557489, at *2-3.  Moreover, Plaintiffs have not demonstrated that the claims of any potential opt-in plaintiffs would actually be barred as the result of any delay occasioned by this Court or by the terms of the notice.  *See Whitehorn*, 767 F. Supp. 2d at 450.  For these reasons, Plaintiffs' request that this Court make a determination of equitable tolling is denied, without prejudice to the rights of potential opt-in plaintiffs to make a further application for tolling upon an appropriate showing of exceptional circumstances and the requisite diligence.

### D.   **Language of the Notice**

Plaintiffs request that all notices or posts to employees' attention be both in English and Chinese, the predominant languages of the proposed collective.  This type of request has been granted in other cases, *see, e.g.*, *Dai v. Lychee House, Inc*., No. 17cv6197 (DF), 2018 WL 4360772, at *12 (S.D.N.Y. Aug. 29, 2018); *see also Castillo v. Perfume Worldwide Inc.*, No. CV 17-2972 (JS) (AKT), 2018 WL 1581975, at *15 (E.D.N.Y. Mar. 30, 2018) (finding that, in light of broad remedial purpose of FLSA, translating a notice into Spanish was appropriate), and this Court finds it reasonable and appropriate in this case, to increase the effectiveness of the notice

in reaching potential opt-in plaintiffs.  Accordingly, Plaintiffs are granted leave to send out notice of the collective action in both English and Chinese.[7]

### E.    Posting of the Notice and Publication of the Notice

Plaintiffs request that the notice be posted in "conspicuous locations" in Defendants' restaurants in order to "ensure and provide the greatest likelihood that the FLSA [collective] receives this notice as intended."  (Pl. Mem., at 13.)  Additionally, they ask for this Court's approval for having an abbreviated form of the Notice of Pendency published in English, Chinese, and Spanish at the Defendants' expense, should the Defendants' fail to furnish complete contract information for the proposed collective, or should more than 20 percent of the notices be returned as undeliverable.  (Notice of Motion for Conditional Collective Certification, at 2.)

As Defendants have not yet been ordered to produce contact information, and there is not any basis for concluding that they will not be able to, ordering that the notice be published in newspapers would be premature at this juncture.  Defendants Hiro Sushi at Ollie's, Rong, and Lu have not opposed the posting of the notice at Hiro Sushi at Ollie's restaurant premises, and this Court will order that notice be posted in this restaurant in a location frequented by potential opt-in plaintiffs.[8]

---

[7] Plaintiffs do not specify which Chinese dialect they propose to use. This Court grants them permission to use whichever dialect or dialects they feel are appropriate in order to provide meaningful notice to all members of the collective.

[8] As it appears that Mah Jong Chinese Kitchen no longer exists, this Court will not order posting of the notice at Mah Jong Chinese Kitchen.

**F.      Defendants' Production of Contact
         <u>Information for Potential Opt-In Plaintiffs</u>**

In order to facilitate the provision of notice, Plaintiffs request that Defendants produce a

Microsoft Excel data file containing contact information ("names, last known address, telephone

numbers, e-mail address[es], and dates of employment") for all non-exempt employees who

worked for Defendants from September 17, 2014, to the date of this Order.  (Pl. Mem., at 13.)

Courts in this District "commonly grant" requests for the production of such information,

included telephone numbers and e-mail addresses, in connection with the conditional

certification of an FLSA collective action.  *Martin v. Sprint / United Mgmt. Co*., No. 15cv5237

(PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016); *see also In re Penthouse Exec. Club*

*Comp. Litig.*, 2010 WL 4340255, at *5 (noting that "courts often order the production of such

information at the notice stage").

Accordingly, Plaintiffs' request that Defendants be required to provide this information is

granted, but, consistent with this Court's decision as to the appropriate scope of the collective,

such production need only be made regarding potential opt-in plaintiffs who worked at Hiro

Sushi at Ollie's as delivery workers, oil woks, water woks, and fry woks, as well as potential opt-

in plaintiffs who worked at Mah Jong Chinese Kitchen as delivery workers.  *See Li v. Ichiro*

*Restaurant Inc.,* No. 14cv10242 (AJN)(JCF), 2015 WL 6828056, at *5 (S.D.N.Y. Nov. 5, 2015)

(where the court found that plaintiffs had only established that a group of delivery workers was

similarly situated, defendants would only be ordered to produce the requested information for the

delivery workers).  The information may be provided by Defendants in Microsoft Excel, or in

any other reasonably useable form.

## IV.   <u>DEFENDANTS' APPLICATION FOR SANCTIONS</u>

In their sur-reply papers, Defendants maintain that plaintiff Xinhui Zhang's Affidavit is flatly contradicted by his sworn deposition testimony, and that the Affidavit, which was prepared by Plaintiff's counsel for his signature, must have therefore been "exaggerated and fabricated" by counsel.  (Hiro Sushi Sur-Reply Mem., at 2; *see also* Freedom Place Sur-Reply Mem., at 7 (calling Xinhui Zhang's Affidavit "cleverly crafted," and "untrue").)  As a result, Defendants contend that sanctions are warranted, including the severe sanction of dismissal of the Complaint.  (Hiro Sushi Sur-Reply Mem., at 3; Freedom Place Sur-Reply Mem., at 8.)

This sanctions application is denied without prejudice.  First, it is improper for Defendants to have sought case-dispositive sanctions in a sur-reply submission on a pending motion.  If Defendants seek such sanctions, then they should file an appropriate motion for such relief, under the Federal Rules of Civil Procedure and the local rules of this Court.  Second, to the extent the motion is based on a deposition transcript, the full transcript – not just excerpts – should be placed before the Court, and properly authenticated.  Third, Defendants should alert the Court to whether the deponent signed the transcript, after having had an opportunity to correct any transcription errors, and any errata sheet should be provided together with the transcript.  Finally, before filing a sanctions motion, Defendants should consider carefully the extent to which the seeming contradictions between Xinhui Zhang's Affidavit and his deposition testimony are, in fact, direct contradictions, warranting the Court's further scrutiny, and should also consider the import of the evidence submitted by Plaintiff's counsel (in response to Defendants' sur-replies) regarding how Xinhui Zhang's Affidavit was prepared.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' motion for conditional certification of the collective and Court-authorized notice (Dkt. 37) is granted in part and denied in part.

Plaintiffs are directed to modify their Proposed Notice of Pendency in accordance with the rulings herein, and to resubmit it to this Court for approval within two weeks of the date of this Order.

Within 30 days of the date of this Order, Defendants shall provide to Plaintiffs' counsel the names, last-known addresses, all known telephone numbers, all known email addresses, all known languages spoken, and dates of employment, for all delivery workers, oil woks, water woks, and fry woks who worked at Hiro Sushi at Ollie's, as well as all delivery workers who worked at Mah Jong Chinese Kitchen at any time from September 17, 2014 to the present.

Once this Court approves the modified notice, Plaintiffs' counsel may arrange to have it disseminated, in any relevant language, via mail, email, and/or text message, to all potential members of the collective. At the same time that the notice is disseminated by Plaintiffs' counsel, Defendants shall post a copy of the notice, in all relevant languages, at Hiro Sushi at Ollie's restaurant, in a conspicuous and unobstructed location or locations likely to be seen by all

currently employed members of the collective, and the notice shall remain so posted throughout

the opt-in period.

Defendants' application for sanctions is denied without prejudice.

Dated:  New York, New York
        February 5, 2019

SO ORDERED

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All Counsel (via ECF)