UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
GENXIANG ZHANG and XINHUI ZHANG, *on behalf*              :
*of themselves and all other persons similarly situated*, :
                                                          :
                              Plaintiffs,                 :            17 Civ. 7066 (JPC)
                                                          :
              -v-                                         :            <u>ORDER</u>
                                                          :
HIRO SUSHI AT OLLIES, INC., d/b/a Hiro Sushi at           :
Ollie's, *et al.*,                                        :
                                                          :
                              Defendants.                 :
                                                          :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiffs brought this collective action under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL") against their former employers,

alleging failure to pay minimum wage, overtime, and spread-of-hours pay, as well as various

record-keeping violations.  Since initiating this case in September 2017, Plaintiffs have resolved

their claims against several Defendants.  Three Defendants remain and are in default:  Hiro Sushi

at Ollie's Inc., d/b/a Hiro Sushi at Ollie's ("Hiro Sushi"), Tao Rong, a/k/a "Cindy Rong" ("Rong"),

and Yi Lu ("Lu," and together with Hiro Sushi and Rong, the "Defaulting Defendants").  On

November 27, 2019, the Honorable John G. Koeltl, to whom this case was previously assigned,

entered a default judgment on liability as to the Defaulting Defendants.  The Court now resolves

the damages, attorneys' fees, and costs due to Plaintiffs from these Defaulting Defendants.

## I. Background

### A. Factual Allegations[1]

Plaintiff Genxiang Zhang was employed by various Defendants in this case.  He first worked, from April 2015 until August 2015, as a delivery person at Defendant Mah Jong Chinese Kitchen at 35 West End Avenue in Manhattan.  Dkt. 1 ("Complaint") ¶¶ 9, 54.  Starting on or about September 1, 2015, Genxiang Zhang began working at Hiro Sushi, located at 160 Freedom Place in Manhattan.  *Id.* ¶ 67; Dkt. 173 ("Genxiang Zhang Affidavit") ¶¶ 3, 10.  Genxiang Zhang worked at Hiro Sushi until October 31, 2017.  Genxiang Zhang Affidavit ¶ 10.  At Hiro Sushi, Genxiang Zhang and the other Plaintiffs worked for Rong and her daughter, Lu.  Complaint ¶¶ 24-29.  While employed there, Genxiang Zhang worked approximately twenty-six hours per week, was paid below the minimum wage, and was not provided wage notices or wage statements that complied with New York law.  *Id.* ¶¶ 80-82; Genxiang Zhang Affidavit ¶¶ 11, 14-15, 27-29.  Specifically, Genxiang Zhang was paid $6.00 per hour from September 1, 2015 through December 20, 2015, and then, starting on December 21, 2015 and through the remainder of his employment at Hiro Sushi, he was paid $7.50 per hour.  Genxiang Zhang Affidavit ¶¶ 14-15.  Moreover, although Genxiang Zhang received approximately $50 to $60 in tips per day at Hiro Sushi, he was not informed of any tip credit that the restaurant intended to take towards the minimum wage.  *Id.* ¶¶ 16-17.

Plaintiff Xinhui Zhang worked at Hiro Sushi from March 1, 2015 to May 31, 2015 as an oil wok and water wok, with various food preparation responsibilities.  Complaint ¶¶ 10, 86, 90.  During his employment at Hiro Sushi, Xinhui Zhang worked approximately seventy-two hours per

---

[1] Given Judge Koeltl's finding of default and liability as to the Defaulting Defendants, the Court accepts as true Plaintiffs' well-pleaded allegations as to those Defendants.  The Court also accepts as true the uncontested sworn and reasonable statements in Plaintiffs' affidavits.

week and was paid a flat compensation of $2,300 each month. *Id.* ¶¶ 92, 95-96; Dkt. 142, Exh. 4 ("Xinhui Zhang Affidavit") ¶¶ 4, 8. He was not given written notice of his salary when he was hired, was not provided any wage statements, and was not paid overtime. Complaint ¶¶ 91, 114; Xinhui Zhang Affidavit ¶¶ 19-21.

As discussed below, two other former employees at Hiro Sushi later joined the case as Plaintiffs: Yu Zhen Zheng and Dan Dan Yuan. Dkts. 81-83, 85. Yu Zhen Zheng worked at Hiro Sushi as a fry wok, with various food preparation responsibilities, from approximately April 1, 2015 to June 30, 2015. Dkt. 142, Exh. 5 ("Yu Zhen Zheng Affidavit") ¶ 3. Yu Zhen Zheng worked sixty-six hours per week at Hiro Sushi and was paid a flat compensation of $500 per week. *Id.* ¶¶ 6, 11-12. He was not paid appropriate minimum wage, nor was he paid overtime compensation for hours worked in a week that exceeded forty hours. *Id.* ¶¶ 11-12, 15. Yu Zhen Zheng also was not provided a compliant wage notice and paystubs while at Hiro Sushi. *Id.* ¶¶ 19-20.

Dan Dan Yuan worked at Hiro Sushi from October 27, 2014 to February 8, 2015. Dkt. 142, Exh. 6 ("Dan Dan Yuan Affidavit") ¶ 3. Although Dan Dan Yuan primarily worked as a waitress there, she also was responsible for food preparation and greeting customers. *Id.* ¶¶ 3, 13, 26. Dan Dan Yuan worked between sixty-six-and-one-half and seventy-four hours per week,[2] and was paid only $5.00 per hour. *Id.* ¶¶ 5-12, 14. She did not receive overtime compensation,

---

[2] Dan Dan Yuan worked two alternating shifts at Hiro Sushi, with both entailing her working seven days per week. Under the first, she worked her scheduled sixty-nine hours per week, but she started work twenty minutes earlier than her scheduled start time and concluded work thirty minutes after her scheduled end time on six of the seven days, for a total of seventy-four hours on those weeks. Dan Dan Yuan Affidavit ¶¶ 6-8. Under the second, she worked her scheduled sixty-one-and-one-half hours per week, but she also started work twenty minutes earlier than her scheduled start time and concluded work thirty minutes after her scheduled end time on six of the days, for a total of sixty-six-and-one-half hours on those weeks. *Id.* ¶¶ 9-11.

sufficient notice of the terms of her employment, or proper paystubs during her employment at Hiro Sushi. *Id.* ¶¶ 27-29.

## B. Procedural History

On September 17, 2017, Plaintiffs Genxiang Zhang and Xinhui Zhang commenced this action, purportedly on behalf of themselves and others similarly situated, against nine Defendants: (1) Hiro Sushi; (2) Freedom Place Rest LLC, d/b/a "Hiro Sushi at Ollie's" ("Freedom Place Rest"); (3) 160 Restaurant Concepts LLC, d/b/a "Hiro Sushi at Ollie's" ("160 Restaurant Concepts"); (4) 39 Wea Food Group, Inc., d/b/a "Mah Jong Chinese Kitchen" ("39 Wea Food Group"); (5) Rong; (6) Lu; (7) Alan Phillips ("Phillips"); (8) Christopher J. Phelan ("Phelan"); and (9) Shomo Sela ("Sela").  The Complaint pleads fourteen causes of action:  (1) violation of the FLSA for failure to pay minimum wage; (2) violation of the NYLL for failure to pay the minimum wage; (3) violation of the FLSA for failure to pay overtime; (4) violation of the NYLL for failure to pay overtime; (5) violation of the NYLL for failure to pay spread of hours; (6) violation of 29 C.F.R. § 531.33 for unlawful meal credit; (7) violation of 12 N.Y.C.R.R. § 146 for unlawful meal credit; (8) violation of the NYLL for failure to provide meal periods; (9) violation of the NYLL for failure to keep records; (10) violation of the NYLL for failure to provide time of hire wage notice; (11) violation of the NYLL for failure to provide wage statements; (12) failure to pay vehicle-related expenses; (13) violations of the Internal Revenue Code for fraudulent filing of tax returns; and (14) violations of the New York General Business Law for deceptive acts and practices.  Complaint ¶¶ 131-199.  The summons and Complaint were served on all nine Defendants.  Dkts. 7-15.  After being originally assigned to Judge Koeltl, the case was reassigned to the undersigned on September 29, 2020.

On February 5, 2019, the Honorable Debra Freeman, to whom this case was referred for general pretrial supervision, Dkt. 21, granted in part Plaintiffs' motion for conditional certification of a collective action under section 216(b) of the FLSA and to facilitate Court-authorized notice to similarly situated employees. Dkt. 62. Following that ruling, Plaintiffs provided Judge Freeman with a modified Proposed Notice of Pendency. Dkt. 70. In June and July 2019, Plaintiffs filed consents executed by Yu Zhen Zheng and Dan Dan Yuan to join the collective action as party Plaintiffs. Dkts. 81-83, 85.

Plaintiffs' claims against six of the nine Defendants have been resolved. On April 18, 2018, Judge Koeltl ordered Plaintiffs' voluntary dismissal without prejudice as to: (1) 160 Restaurant Concepts, LLC; (2) Phillips; (3) Phelan; and (4) Sela. Dkt. 32. Then, on December 16, 2020, the undersigned entered judgment, following Plaintiffs' acceptance of an offer of judgment pursuant to Federal Rule of Civil Procedure 68, as to two other corporate Defendants: Freedom Place Rest and 29 Wea Food Group. Dkt. 156 at 1-2. Pursuant to the terms of the Rule 68 judgment, Plaintiffs were awarded $25,000, to include attorneys' fees, costs, and other expenses, with an installment plan for that payment. *Id.*

As indicated above, three Defendants—*i.e.*, Hiro Sushi, Rong, and Lu—have defaulted. Early on in this litigation, the Defaulting Defendants were represented by Stephen K. Seung, Esq., and Perry Burkett, Esq., of the Law Offices of Stephen K. Seung. *See* Dkts. 28, 36. However, on June 20, 2019, those attorneys requested to be relieved as counsel, citing the Defaulting Defendants' failure to pay outstanding legal bills. Dkt. 78-2. On July 8, 2019, Judge Koeltl granted the motion to withdraw, and stayed the case until August 9, 2019, by which date Rong and Lu were required to appear with new counsel or *pro se*, and Hiro Sushi was required to appear with new counsel. Dkt. 84. Judge Koeltl advised that "[i]f these defendants do not so appear by

August 9, 2019, the plaintiffs may seek a default judgment against them." *Id.*  The Defaulting Defendants, however, have not appeared in this case since.

On October 24, 2019, the Clerk of the Court issued Certificates of Default as to each of the Defaulting Defendants.  Dkts. 102 (Rong), 103 (Lu), 104 (Hiro Sushi).  On November 15, 2019, Judge Koeltl issued an Order, scheduling a hearing for November 26, 2019, for the Defaulting Defendants to show cause why a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b) should not be entered against them.  Dkt. 109.  The Order advised the Defaulting Defendants that their failure to respond may result in a default judgment being entered against them without a trial.  *Id.* at 2.  Plaintiffs served the November 15, 2019 Order on the Defaulting Defendants on November 18, 2019.  Dkts. 110 (Hiro Sushi), 111 (Lu), 112 (Rong).  On November 26, 2019, Judge Koeltl conducted the scheduled show cause hearing.  Later that day, Judge Koeltl entered an Order finding that Plaintiffs are entitled to a default judgment as to the Defaulting Defendants, with damages to be later determined.  Dkt. 116.

On August 22, 2020, Plaintiffs filed proposed findings of fact and conclusions of law in connection with their request for damages, Dkt. 141, along with a supporting declaration from their attorney, Dkt. 142.  Attached to that attorney declaration are affidavits from each of the four Plaintiffs.  *Id.*, Exh. 3 (Genxiang Zhang); Exh. 4 (Xinhui Zhang); Exh. 5 (Yu Zhen Zheng); Exh. 6 (Dan Dan Yuan).  Also on August 22, 2020, Plaintiffs moved for attorneys' fees and costs, Dkt. 143, along with another declaration from their attorney, Dkt. 144 ("Troy Fees Declaration"), and a supporting memorandum of law, Dkt. 145.  On June 28, 2022, Genxiang Zhang filed a

supplemental affidavit in support of his request for damages.  *See generally* Genxiang Zhang Affidavit.  No opposition has been filed by the Defaulting Defendants.[3]

## II. Liability

As noted, Judge Koeltl previously entered default judgment on liability as to the Defaulting Defendants.  Given the default of these Defendants, the Court "must accept as true the well-pleaded allegations of the . . . complaint that are pertinent to liability."  *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 311 (S.D.N.Y. 2014) (citation omitted).  The Court briefly addresses why all three Defaulting Defendants are subject to liability under the applicable laws.

The FLSA's minimum wage and overtime provisions protect "employees who in any workweek . . . [are] employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. §§ 206(a), 207(a).  A business qualifies as such an enterprise if it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has "annual gross volume of sales made or business done" of $500,000 or more.  *Id.* § 203(s)(1).  "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  *Id.* § 203(b).  The Complaint alleges that Hiro Sushi satisfied these threshold requirements for liability under FLSA.  Complaint ¶¶ 12 ("Upon information and believe, HIRO SUSHI AT OLLIE'S INC. d/b/a Hiro Sushi at Ollie's is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year."), 13 ("Upon information and believe, HIRO SUSHI AT OLLIE'S d/b/a Hiro Sushi at Ollie's purchased and handled goods moved in interstate commerce.").  Hiro Sushi also plainly falls under the NYLL's

_____

[3] On July 8, 2020, Judge Koeltl referred this matter to Judge Freeman for consideration of a motion for attorneys' fees against the Defaulting Defendants.  Dkt. 136.  On March 28, 2022, the undersigned withdrew that order of referral.  Dkt. 160.

definition of an "employer."  *See* N.Y. Lab. Law § 190(3) ("'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service.  The term 'employer' shall not include a governmental agency.").

With respect to the two Defaulting Defendants who are individuals, Rong and Lu, the FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013).  The Second Circuit uses a multi-factor "economic reality" test to determine whether an individual is an "employer."  *Id.* at 104-05.  The relevant considerations are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.* at 105 (quoting *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)).  Moreover, "[c]ourts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010) (quotations omitted).

The Complaint sufficiently pleads allegations for individual liability, under the FLSA and the NYLL, as to both Rong and Lu.  The Complaint alleges that Rong and Lu "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at Hiro Sushi at Ollie's."  Complaint ¶¶ 24, 27.  As to Rong, the Complaint further alleges that she was "the principal day-to-day manager of Hiro Sushi at Ollie's

and Mah Jong Chinese Kitchen responsible for hiring, termination, discipline, setting employee schedules and tasks, and paying employee wages." *Id.* ¶ 25.  Lu, who is alleged to be Rong's daughter, allegedly was "actively involved in the day-to-day operations of Hiro Sushi at Ollie's," with "the authority to hear employee grievances and effect changes to the quality and terms of employees' employment, including changing their schedules, compensation rates, disciplining, hiring, and termination." *Id.* ¶ 28.  These well-pleaded allegations, which are accepted as true at this stage, sufficiently establish individual liability for Rong and Lu under the FLSA and the NYLL.[4]

## III.  Damages

Because a default is not an admission of damages, the Court must scrutinize the evidence in support of damages before issuing a monetary award.  *See, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 82 n.6 (2d Cir. 2009); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.").  Here, the Defaulting Defendants have not come forward with any records or other evidence of the hours worked by Plaintiffs or the wages they were paid.  As noted, however, the four Plaintiffs have submitted sworn affidavits to support the bases for the damages sought.  *See Parilla v. Salt & Pepper on 33rd St. Inc.*, No. 12 Civ. 6382 (AKH), 2013 WL 4536628, at *1 (S.D.N.Y. Apr. 8, 2013) (finding that the plaintiffs' declarations "describing their hours worked and wages . . . satisfy

---

[4] Rong's role in controlling Hiro Sushi's operations was further confirmed by the affidavits submitted by the four Plaintiffs in support of their damages request.  *See* Genxiang Zhang Affidavit ¶¶ 21-22 (reporting that Rong hired, paid, and fired him); Xinhui Zhang Affidavit ¶¶ 10-13 (reporting that Rong hired, paid, supervised and fired him); Yu Zhen Zheng Affidavit ¶¶ 13, 16 (reporting that Rong hired and paid him); Dan Dan Yuan ¶¶ 19-22 (reporting that Rong was known as the "Boss" at Hiro Sushi and hired, paid, and supervised her).

[their] burden to establish damages"); *Flores v. Martinez*, No. 17 Civ. 561 (BMC), 2017 WL 1497954, at *2 (E.D.N.Y. Apr. 26, 2017) (observing that the plaintiff's "affidavit constitutes adequate proof of his damages").

## A.  Overview of Proof Standards

Under the FLSA, if "the employer's records are inadequate or inaccurate and the employee cannot offer convincing substitutes," the employee must "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)).  The employee's "own recollection" can be sufficient to meet that burden, provided that the recollection allows for a just and reasonable inference of the hours worked.  *Id.*; *see Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct.").  Then, "[t]he burden . . . shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Kuebel*, 643 F.3d at 362 (quoting *Anderson*, 328 U.S. at 687-88).

The NYLL standard is similar, but slightly more favorable to the employee.  "New York law similarly provides that where an employer fails 'to keep adequate records . . . the employer in violation shall bear the burden of proving that the complaining worker was paid wages, benefits and wage supplements.'" *Pest v. Bridal Works of N.Y., Inc.*, 268 F. Supp. 3d 413, 423 (E.D.N.Y. 2017) (quoting, first N.Y. Lab. Law § 196-a(a), then N.Y. Lab. Law § 195(4)).  But unlike the FLSA, the NYLL "does not permit an employer to discharge this burden by undermining the reasonableness of an employee's evidence that he was underpaid. . . .  An employer must

demonstrate that it in fact paid its employees 'wages, benefits, and supplements.'" *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (quoting N.Y. Lab. Law § 196-a(a)).  So it therefore logically follows that "if an employer cannot satisfy its burden under the FLSA, it cannot satisfy this more demanding burden of the NYLL." *Id.* (quotation marks, citations, and alterations omitted).

## B.  Evidence Offered by Plaintiffs

### 1.  Genxiang Zhang

Genxiang Zhang was employed by Hiro Sushi from on or about September 1, 2015 until on or about October 31, 2017, working as a delivery person.  Genxiang Zhang Affidavit ¶¶ 10, 13.  Genxiang Zhang states that, during this time, his work schedule was from 4:00 p.m. to 10:00 p.m. for three days of the week, and from 5:00 p.m. to 9:00 p.m. for two days of the week.  *Id.* ¶ 11.  He was allowed a ten-minute meal break around 8:00 p.m., unless a delivery order came in at that time.  *Id.* ¶ 13.  Thus, during his twenty-five-month employment at Hiro Sushi, Genxiang Zhang worked approximately twenty-six hours per week.  *Id.* ¶ 11.

Genxiang Zhang reports being paid $6.00 per hour from September 1, 2015 to December 20, 2015,[5] and $7.50 per hour from December 21, 2015 until the end of his employment with the Defaulting Defendants, which was October 31, 2017.  *Id.* ¶¶ 10, 14-15.  He also received approximately $50 to $60 in tips each day.  *Id.* ¶ 16.  However, the Defaulting Defendants never informed Genxiang Zhang that they would be taking any "tip credits" toward the minimum wage,

---

[5] As noted, Genxiang Zhang previously worked for another Defendant, Wea Food Group, from April 1, 2015 to August 31, 2015.  Genxiang Zhang Affidavit ¶ 3.  Genxiang Zhang avers that he "was paid by 39 WEA FOOD GROUP through December 20, 2015, even though [he] started working at 160 Freedom Place [*i.e.*, Hiro Sushi] beginning in about September 1, 2015."  *Id.* ¶ 14.

and the Defaulting Defendants retained fifteen percent of his credit card tips. *Id.* ¶ 17.[6]  While working at Hiro Sushi, Genxiang Zhang never received any notice or other information regarding wages. *Id.* ¶ 28.  Nor did he ever receive written notice, either in English or his native language of Chinese, of his rate of pay, his employer's regular pay day, and other information required by the NYLL. *Id.* ¶¶ 27, 29.

### 2. Xinhui Zhang

Xinhui Zhang worked at Hiro Sushi from on or about March 1, 2015 to May 31, 2015 as a water wok and oil wok.  Xinhui Zhang Affidavit ¶ 3.  In that job, he was responsible for frying pork ribs, peeling shrimp, washing and cutting vegetables, and cutting beef, pork, and chicken. *Id.* ¶¶ 6-7.  Xinhui Zhang contends that his work schedule at Hiro Sushi alternated between two twelve-hour shifts: 11:00 a.m. to 11:00 p.m., and 12:00 p.m. to 12:00 a.m. *Id.* ¶ 4.  He worked six day a week, meaning that he worked seventy-two hours per week. *Id.*  He did not receive any fix meal breaks while working at Hiro Sushi, but rather he would typically each lunch while working. *Id.* ¶ 5.  Xinhui Zhang was paid a flat compensation of $2,300 per month, *id.* ¶ 8, and was not paid for hours worked in excess of forty hours per week, *id.* ¶ 19.

During his employment at Hiro Sushi, Xinhui Zhang was not provided any written notice in his primary language of Chinese regarding his rate or rates of pay and the basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by his employer; the name of his employer; any "doing business as" names used by his employer; the physical and

---

[6] Genxiang Zhang also alleges in his affidavit that he was not paid for hours in excess of forty hours per week, and that he never received spread-of-hours pay, *see* Genxiang Zhang Affidavit ¶¶ 19-20, yet he does not allege to have worked more than forty hours per week or more than a ten-hour spread on a given day while at Hiro Sushi, *see generally id.*

mailing addresses of his employer's main office or principal place of business; and the telephone number of his employer.  *Id.* ¶ 20.  He also was never given any paystubs by Hiro Sushi.  *Id.* ¶ 21.

### 3.  Yu Zhen Zheng

Yu Zhen Zheng was employed by Hiro Sushi from on or about April 1, 2015 to June 30, 2015.  Yu Zhen Zheng Affidavit ¶ 3.  He worked as a fry wok, responsible for cutting, preparing, and organizing food ingredients, including vegetables, shrimps, chicken, pork, and beef, and he also made soup, chicken dishes, and other stir-fry dishes.  *Id.* ¶¶ 7-8.  Yu Zhen Zheng's work schedule at Hiro Sushi was from 10:00 a.m. to 9:00 p.m., six days a week.  *Id.* ¶ 4.  That comes to a sixty-six-hour work week.  He had no fixed meal break, and usually had to eat while working.  *Id.* ¶ 9.  Yu Zhen Zheng received a flat compensation of $500 per week, which entailed him being paid $1,000 every two weeks.  *Id.* ¶¶ 11-12.  He was not paid extra for hours worked in excess of forty hours in a week.  *Id.* ¶ 15.

While working at Hiro Sushi, Yu Zhen Zheng was not given any written notice in his primary language of Chinese regarding his rate or rates of pay and the basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by his employer; the name of his employer; any "doing business as" names used by his employer; the physical and mailing addresses of his employer's main office or principal place of business; and the telephone number of his employer.  *Id.* ¶ 19.  He too never received any paystubs while working at Hiro Sushi.  *Id.* ¶ 20.

### 4.  Dan Dan Yuan

Dan Dan Yuan was employed by Hiro Sushi from October 27, 2014 to February 8, 2015, working as a waitress.  Dan Dan Yuan Affidavit ¶ 3.  In addition to serving or waiting, she also

was responsible for peeling beans, wrapping wontons, preparing sauce, and preparing vegetables, which would take up approximately thirty minutes each day. *Id.* ¶ 13.

Dan Dan Yuan's work schedule alternated between two kinds of shifts, both of which had her working seven days per week. The first work schedule entailed her working: 11:30 a.m. to 9:30 p.m. on Mondays, Wednesdays, Thursdays, and Sundays; 11:30 a.m. to 10:30 p.m. on Tuesdays; and 4:00 p.m. to 11:00 p.m. on Fridays and Sundays. *Id.* ¶ 6. For six of the seven days, she began working twenty minutes before her scheduled work time and ended work thirty minutes later than scheduled. *Id.* ¶ 7. As a result, for this first shift schedule, she worked approximately seventy-four hours per week. *Id.* ¶ 8. Dan Dan Yuan's second work schedule entailed her working: 11:30 a.m. to 10:30 p.m. on Tuesdays and Thursdays; 11:30 a.m. to 9:30 p.m. on Fridays and Saturdays; and 4:00 p.m. to 10:30 p.m. on Mondays, Wednesdays, and Sundays. *Id.* ¶ 9. And again, for six of the seven days, she in fact began working twenty minutes before her scheduled start time and ended work thirty minutes later than she was scheduled to end. *Id.* ¶ 10. As a result, for this second shift schedule, she worked approximately sixty-six-and-one-half hours per week. *Id.* ¶ 11. While she received no fixed meal breaks at Hiro Sushi, Dan Dan Yuan was given ten to fifteen minutes to eat, but would have to stop eating if a customer came in at the time. *Id.* ¶ 12.

Dan Dan Yuan was paid approximately $5.00 per hour, and received around $60 to $70 in tips on a weekday and approximately $100 to $120 in tips on a weekend day. *Id.* ¶ 15. Approximately $12.50 was taken out of her salary each week as a meal deduction. *Id.* ¶ 17. She also was required to purchase her own uniform, and she bought two during the course of her employment, which cost approximately $60 in total. She was not paid extra for hours that exceeded forty hours per week. *Id.* ¶ 27.

During the time of her employment at Hiro Sushi, Dan Dan Yuan was not given any written notice in her primary language of Chinese regarding her rate or rates of pay and the basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by her employer; the name of her employer; any "doing business as" names used by her employer; the physical and mailing addresses of her employer's main office or principal place of business; and the telephone number of her employer. *Id.* ¶ 28. Her wage statements failed to provide the wage rate per hour, how many hours she worked per week, and the accurate wage rate. *Id.* ¶ 29.

## C. Applicable Damages Period

The standard statute of limitations for a FLSA action for "unpaid minimum wages, unpaid overtime compensation, or liquidated damages" is two years. 29 U.S.C. § 255(a). But if an employee proves that the employer's violations were willful, the statute of limitations is instead three years. *Id.*; *see Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009). Willfulness for purposes of the FLSA is "'kn[owledge] or . . . reckless disregard for . . . whether [the employer's] conduct was prohibited by' the Act." *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Given the default of the Defaulting Defendants, the Court finds their FLSA violations to be willful. *See, e.g.*, *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 671 (S.D.N.Y. 2011) (adopting the magistrate judge's determination "that Defendants' default results in a finding that they willfully violated state and federal labor laws"); *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010) (holding that "defendants defaulted and thus plaintiffs' allegations that the FLSA violations were willful are deemed admitted"). Thus, there is a three-year statute of limitations for Plaintiffs' FLSA claims against the Defaulting Defendants. The statute of limitations under the NYLL is six years. N.Y. Lab. Law § 663(3).

### D.  Unpaid Minimum Wage

The FLSA and the NYLL require employers to pay their employees a minimum wage equal to or greater than the statutorily required amount.  *See* 29 U.S.C. § 206; N.Y. Lab. Law § 652.  The federal minimum wage throughout Plaintiffs' employment was $7.25 per hour.  *See* 29 U.S.C. § 206(a)(1)(c).  The applicable minimum wage in New York during Plaintiffs' employment was as follows: $8.00 per hour from December 31, 2013 until December 30, 2014; $8.75 per hour from December 31, 2014 until December 30, 2015; $9.00 per hour in from December 31, 2015 until December 30, 2016; and $11.00 per hour from December 31, 2016 until December 30, 2017.  N.Y. Lab. Law § 652.[7]  Thus, during Plaintiffs' employment by the Defaulting Defendants, the New York rate was higher than the federal rate and therefore is the relevant rate for damages for unpaid wages.  *See* 29 U.S.C. § 218(a) ("No provision of this chapter or of any other thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . .").

Two Plaintiffs—Genxiang Zhang, who worked as a delivery person, and Dan Dan Yuan, who worked as a waitress—also received tips in connection with their employment at Hiro Sushi.  Both the FLSA and the NYLL allow an employee to pay a food service employee who receives tips below the minimum wage, provided that the wage paid plus the tips equals or exceeds the minimum wage.  *See* 29 U.S.C. § 203(m)(2); 12 N.Y. Comp. Codes R. & Regs. § 146-1.3(b).  But under the FLSA and the NYLL, an employer is not entitled to such a tip credit unless certain

---

[7] For conduct occurring 2016 onward, the NYLL mandates differing minimum wages for small employers, which employ ten or fewer employees, and for large employers, which employ eleven or more employees.  *See* N.Y. Lab. Law § 652(a).  Dan Dan Yuan claims in her affidavit that Hiro Sushi employed "at least twenty (20) employees in the restaurant including five (5) deliverymen, two (2) phone attendants, six to seven (6-7) kitchen workers, one (1) sushi chef, two (2) wait staffs, one (1) busboy."  Dan Dan Yuan Affidavit ¶ 4.  The Court therefore uses the minimum wage requirements for large employers, which are reflected in the rates set out above.

conditions are met. *See* 29 U.S.C. §§ 203(m), 206(a)(1); 12 N.Y. Comp. Codes R. & Regs. § 146-1.3(b). One of the conditions required by both federal and state law involves sufficient notice of the tip credit to the employee.

"Under the FLSA, an employer may not claim a tip credit as to an employee's wages unless the employer has informed that employee of the provisions of the section of the FLSA permitting the tip credit." *Inclan v. New York Hosp. Grp., In*c., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (citing 29 U.S.C. § 203(m)). The notice provision is "strictly construed" and "requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit." *Id.* (quotation omitted). "However, the FLSA's notice requirement does not require that the notice be given in writing." *Gamero*, 272 F. Supp. 3d at 501 (quotations and alteration omitted). "The employer bears the burden of showing that it satisfied . . . the requirement." *Inclan*, 95 F. Supp. 3d at 497 (quotations and alteration omitted). "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum wage." *Id.* (quotations omitted).

The NYLL tip credit is also subject to a notice requirement. *See Gamero*, 272 F. Supp. 3d at 501. "But there is a critical distinction between the NYLL's notice provision and the FLSA's: Notice of the tip credit under the NYLL must be written." *Id.* (quotation and alterations omitted). The notice must state the amount of tip credit taken from the hourly rate and that the employer will pay the employee additional wages if tips do not bring the employee up to the basic hourly rate. *Id.* (citing 12 N.Y. Comp. Codes R. & Regs. § 146-2.2(a)). "[T]his notice must be written in both English and 'any other language spoken by the new employee as his/her primary language' . . . [and] once an employer has provided written notice of this tip credit, the employer must obtain 'acknowledgement of receipt signed by the employee,' . . . [to be] 'kept on file for six years.'" *Id.*

(quoting 12 N.Y. Comp. Codes R. & Regs. § 146–2.2(a)(1)-(2), (c)).  "An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid."  *Id.* (quotation omitted).  The NYLL also "imposes a recordkeeping burden," requiring employers taking a tip credit to "'establish, maintain, and preserve for at least six years'" payroll records showing tip credits.  *Inclan*, 95 F. Supp. 3d at 498 (quoting 12 N.Y. Comp. Codes R. and Regs. § 146-2.1(a)(9)).

**Genxiang Zhang.**  Genxiang Zhang was paid $6.00 per hour from September 1, 2015 to December 20, 2015, and then $7.50 per hour from December 21, 2015 through October 31, 2017. *See* Genxiang Zhang Affidavit ¶¶ 14-15.  These wages were below the prevailing minimum wage in New York at the time.  *See* N.Y. Lab. Law § 652.  In addition, although Genxiang Zhang received tips as a delivery person, he avers in his affidavit that he "was not informed of any tip credits Defendants intended to take toward the minimum wage."  Genxiang Zhang Affidavit ¶ 17. The Defaulting Defendants therefore are not entitled to a tip credit and are liable to Genxiang Zhang for the full difference between the New York minimum wage and the hours he was paid. *See Inclan*, 95 F. Supp. 3d at 497; *Rios v. BBQ Chicken Don Alex, Inc.*, No. 16 Civ. 6630 (ILG), 2018 WL 264512, at *4 (E.D.N.Y. Jan. 2, 2018) (explaining that because "under both the FLSA and NYLL, the employer bears the burden of showing that it complied with the tip-credit notice requirements," the defendants "obviously have not carried that burden, as they had not appeared, and Plaintiff has also specifically alleged that Defendants did not comply with the tip-credit notice requirements").

From September 1, 2015 to December 20, 2015, Genxiang Zhang was paid $6.00 per hour, yet the New York minimum wage at the time was $8.75 per hour, meaning he was underpaid $2.75 per hour and $71.50 per week for this period.  From December 21, 2015 to December 30, 2015,

Genxiang Zhang was paid $7.50 per hour, yet the New York minimum wage then was $8.75 per hour, meaning he was underpaid $1.25 per hour and $32.50 per week for this period.  From December 31, 2015 to December 30, 2016, Genxiang Zhang remained paid $7.50 per hour, yet the minimum wage was $9.00 per hour, meaning he was underpaid $1.50 per hour and $39.00 per week for that period.  And from December 31, 2016 to October 31, 2017, Genxiang Zhang still was paid $7.50 per hour, yet the minimum wage had risen to $11.00 per hour, meaning he was underpaid $3.50 per hour and $91.00 per week for this period.  This yields a shortfall of $1,133.99 from September 1, 2015 to December 20, 2015; $46.48 from December 21, 2015 to December 30, 2015; $2,028.00 from December 31, 2015 to December 30, 2016; and $3,964.87 from December 31, 2016 to October 31, 2017, and thus a total shortfall of $7,173.34 in unpaid minimum wage due to Genxiang Zhang.

*Xinhui Zhang.*  Xinhui Zhang's monthly pay of $2,300 equates to an annual salary of $27,600 and a weekly salary of $530.77.  *See* Xinhui Zhang Affidavit ¶ 8.  Based on a forty-hour workweek, this results in an hourly wage rate of $13.27.  Because that salary is above the applicable New York minimum wage at the time, Xinhui Zhang is not owed any unpaid minimum wage damages.

*Yu Zhen Zheng.*  Yu Zhen Zheng was paid $500 per week at Hiro Sushi, which comes to an hourly salary of $12.50 based on a forty-hour workweek.  *See* Yu Zhen Zheng Affidavit ¶ 11.  He therefore was paid above the New York minimum wage at the time of his employment , and is not entitled to any minimum wage compensation .

*Dan Dan Yuan.*  Dan Dan Yuan's hourly salary at Hiro Sushi of $5.00 was below the New York minimum wage at all times of her employment.  In addition, like Genxiang Zhang, Dan Dan Yuan has sworn that the Defaulting Defendants never informed her of any allowances being

claimed as a part of her wage, Dan Dan Yuan Affidavit ¶ 28, and therefore the Defaulting Defendants are not entitled to take a "tip credit" toward the minimum wage, *see Inclan*, 95 F. Supp. 3d at 497; *Rios*, 2018 WL 264512, at *4.  Under the prevailing New York minimum wage at the time of her employment at Hiro Sushi, Dan Dan Yuan was entitled to a minimum wage of $8.00 per hour during her period of employment from October 27, 2014 to December 30, 2014 (9.29 weeks) and $8.75 per hour during her period of employment from December 31, 2014 to February 8, 2015 (5.71 weeks).  Dan Dan Yuan's hourly wage of $5,00, in consideration of those applicable minimum rates, yields a shortfall of $240.00 from October 27, 2014 to December 30, 2014, and $127.13 from December 31, 2014 to February 8, 2015, which amounts to a total shortfall of $1,959.88 in unpaid minimum wage.

## E.  Unpaid Overtime

The FLSA and the NYLL both require employers to pay employees a rate of one-and-one-half times their regular hourly wages for each hour worked over forty in a workweek.  29 U.S.C. § 207(a)(1); N.Y. Lab. Law § 650 *et seq.*

*Genxiang Zhang.*  Because Genxiang Zhang worked at Hiro Sushi for twenty-six hours per week, *see* Genxiang Zhang Affidavit ¶ 11, he was not entitled to overtime pay.

*Xinhui Zhang.*  As noted above, Xinhui Zhang's monthly salary at Hiro Sushi of $2,300 equates to a weekly hourly wage rate of $13.27.  *See* Xinhui Zhang Affidavit ¶ 8.  Xinhui Zhang worked seventy-two hours per week, which means that he worked thirty-two overtime hours per week.  *Id.* ¶ 4.  However, he was not paid for hours worked beyond those forty hours.  *Id.* ¶ 19. He therefore was owed thirty-two hours of overtime for each week that he worked at Hiro Sushi. Time-and-a-half pay, based on an $13.27 hourly rate, yields an overtime rate of $19.91.  Xinhui

Zhang worked 13.14 weeks from March 1, 2015 through May 31, 2015. *Id.* ¶ 8. Xinhui Zhang thus is owed $637.12 per week, and a total of $8,371.76, in unpaid overtime.

**Yu Zhen Zheng.**  Yu Zhen Zheng worked sixty-six hours per week, and likewise did not receive extra pay for hours worked each week in excess of forty hours. Yu Zhen Zheng Affidavit ¶ 15. As noted above, Yu Zhen Zhang received an hourly wage of $12.50 while at Hiro Sushi. He therefore was entitled to overtime pay at 1.5 times that hourly salary, or $18.75 per hour, for twenty-six hours each week. That amounts to $487.50 in unpaid overtime per week. Because Yu Zhen Zheng worked these hours at Hiro Sushi for thirteen weeks from April 1, 2015 to June 30, 2015, he is owed $6,337.50 in unpaid overtime.

**Dan Dan Yuan.**  Dan Dan Yuan worked alternating schedules, which entailed her working either seventy-four hours per week or sixty-six-and-one-half hours per week, which averages to seventy-and-one-quarter hours per week. Dan Dan Yuan Affidavit ¶¶ 5-11. And therefore Dan Dan Yuan worked on average thirty-and-one-quarter hours over forty hours each week. Because she was not paid the minimum wage at Hiro Sushi, she is entitled to an overtime rate at 1.5 of the New York minimum wage during her employment. This comes to an overtime rate of $12.00 per hour for her period of employment from October 27, 2014 to December 30, 2014 (9.29 weeks) and $13.13 per hour from December 31, 2014 to February 8, 2015 (5.71 weeks). This amounts to unpaid overtime wages of $3,372.27 from October 27, 2014 to December 30, 2014, and $2,267.91 from December 31, 2014 to February 8, 2015, for total unpaid overtime wages of $5,640.18 owed to Dan Dan Yuan.

## F.  Unpaid Spread-of-Hours Pay

Under the regulations implementing the NYLL, restaurant employees are entitled to "one additional hour of pay at the basic minimum hourly rate" for "each day on which the spread of

hours exceeds 10."  12 N.Y. Comp. Codes R. & Regs. § 146-1.6(a); *see Rana v. Islam*, 887 F.3d 118, 123 n.3 (2d Cir. 2018) ("New York . . . awards 'spread of hours' pay in addition to minimum and overtime wages.").  The "spread of hours" is defined as "the length of the interval between the beginning and end of an employee's workday," including "working time plus time off for meals plus intervals off duty."  12 N.Y. Comp. Codes R. & Regs. § 146-1.6.  For example, if an employee works from 7:00 a.m. to 10:00 a.m., then from 7:00 p.m. to 10:00 p.m., their spread of hours is fifteen hours, even though they worked only six hours.  *See id.*  This regulation applies to "all employees in restaurants . . . regardless of a given employee's regular rate of pay."  *Id.* § 146-1.6(d); *see also Benitez v. Bolla Operating LI Corp.*, 137 N.Y.S.3d 371, 373 (App. Div. 2020) ("Although an employee who earns more than the minimum wage rate generally is not entitled to receive spread-of-hours pay . . . , under the Hospitality Industry Wage Order, all employees in restaurants and all-year hotels are entitled to spread-of-hours pay regardless of their regular pay rate." (internal quotation marks and citations omitted)).

    ***Genxiang Zhang.***  Because Genxiang Zhang worked from 4:00 p.m. to 10:00 p.m. or from 5:00 p.m. to 9:00 p.m., *see* Genxiang Zhang Affidavit ¶ 11, he is not entitled to spread-of-hour pay under the NYLL.

    ***Xinhui Zhang.***  From March 1, 2015 to May 31, 2015, Xinhui Zhang worked six days per week, and each day more than ten hours elapsed between the start and end of his workday.  Xinhui Zhang Affidavit ¶ 4.  He therefore is entitled to one hour at the then-basic minimum hourly rate (*i.e.*, $8.75) for six days per week, which comes to $52.50 per week from March 1, 2015 to May 31, 2015, and a total of $691.25.[8]

---

[8] Because the period of Xinhui Zhang's employment from March 1, 2015 to May 31, 2015 consists of thirteen full weeks and one day, the Court calculates Xinhui Zhang's spread-of-hour pay by multiplying $52.50 by 13 weeks, plus $8.75 in order to account for the extra day.

**Yu Zhen Zheng**.  From April 1, 2015 to June 30, 2015, Yu Zhen Zheng worked six days per week and on those days more than ten hours elapsed between the start and end of his workday. Yu Zhen Zheng Affidavit ¶ 4.  He, therefore, is entitled to one hour at the then-basic minimum hourly rate (*i.e.*, $8.75) for six days per week over those thirteen weeks, which comes to $52.50 per week from April 1, 2015 to June 30, 2015, and a total of $682.50.

**Dan Dan Yuan**.  The Court has calculated that, from October 27, 2014 to February 8, 2015, Dan Dan Yuan worked four days per week when more than ten hours elapsed between the start and end of her workday during her first shift schedule, and three days per week when more than ten hours elapsed between the start and end of her workday during her second shift schedule.[9]  Dan Dan Yuan Affidavit ¶¶ 5-11.  On the days when she worked in excess of a ten-hour spread, Dan Dan Yuan is owed an additional hour of pay at the then-basic minimum wage rate in New York, which was $8.00 per hour until December 30, 2014 and $8.75 per hour starting on December 31, 2014.  Therefore, Dan Dan Yuan is entitled to a one hour pay for three days for all weeks, which comes to $222.96 for the period from October 27, 2014 to December 30, 2014, and $149.89 from December 31, 2014 to February 8, 2015.  In addition, to account for the alternating weeks when

---

[9] Although Dan Dan Yuan's first shift schedule entailed her working exactly ten hours on Mondays, Wednesdays, Thursdays, and Sundays, and her second shift schedule entailed her working exactly ten hours on Fridays and Saturdays, she "actually began work twenty (20) minutes earlier before [her] scheduled working time for six (6) days a week and left . . . thirty (30) minutes late for six (6) days a week."  Dan Dan Yuan Affidavit ¶¶ 5-10.  Dan Dan Yuan, however, does not specify in her affidavit which of the six days she began work twenty minutes earlier than her scheduled start time and which of the six days she left work thirty minutes later than her scheduled end time.  To account for the possibility that Dan Dan Yuan may have started work earlier and/or ended work later than her scheduled time on days that she was scheduled to work less than ten hours or eleven hours, the Court considers Dan Dan Yuan to have worked over ten hours for four of the days during her first shift schedule and for three of the days during her second shift schedule.  *See Electrolux Home Prods., Inc. v. BuyRite Appliances, LLC*, No. 14 Civ. 2461 (ILG) (SMG), 2014 WL 5140327, at *2 (E.D.N.Y. Oct. 14, 2014) (observing that on default judgment, "all doubts, whether about the sufficiency of the pleadings or the calculation of damages, should be resolved in favor of the defaulting party").

Dan Dan Yuan worked a fourth day with a spread in excess of ten hours, she is entitled to an additional $32 from October 27, 2014 to December 30, 2014 and an additional $26.25 from December 31, 2014 to February 8, 2015.  Thus, in total, Dan Dan Yuan is entitled to $431.10 for unpaid spread-of-hours pay.

## G. Liquidated Damages

Plaintiffs also seek liquidated damages equaling their unpaid wages.  Liquidated damages are available under both the FLSA and the NYLL.  "Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages."  *Barfield*, 537 F.3d at 150 (citing 29 U.S.C. § 216(b)).  The FLSA nevertheless gives courts discretion to deny liquidated damages if the employer shows that their violations were "in good faith" and that they "had reasonable grounds for believing" their acts were not violations of the Act.  29 U.S.C. § 260.  "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999).  "[T]he employer's burden is a difficult one," and "double damages are the norm and single damages the exception."  *Barfield*, 537 F.3d at 150 (quotation and alterations omitted).

The NYLL also allows for liquidated damages awards equaling one hundred percent of the wages due, "with an exception for good faith."  *Galvez v. 800 Ginza Sushi Inc.*, No. 19 Civ. 8549 (JPC), 2022 WL 748286, at *18 (S.D.N.Y. Mar. 11, 2022); *see* N.Y. Lab. Law §§ 198(1-a), 663(1).  Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith."  *Zubair v. EnTech Eng'g P.C.*, 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012).  Thus, there are "no meaningful differences" between liquidated damages under the FLSA and the NYLL.  *Rana*, 887 F.3d at 123 (citing N.Y. Lab. Law § 198).

Because Defendants have defaulted, they have not met their burden to rebut this presumption in favor of awarding liquidated damages. *See Lopez v. Emerald Staffing, Inc.*, No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *11 (S.D.N.Y. Feb. 26, 2020) ("Having defaulted, Defendants have not carried their burden of demonstrating good faith under the NYLL."); *see also Herman*, 172 F.3d at 142 (explaining that an employer's willful failure to comply with the FLSA despite its knowledge of the statute's requirements barred a good faith defense). The FLSA and the NYLL, however, do "not allow[] duplicative liquidated damages for the same course of conduct." *Rana*, 887 F.3d at 123. The Court awards Plaintiffs liquidated damages as to the minimum wage, overtime, and spread-of-hours claims under the NYLL.

## H. Failure to Provide Wage Notice

The Wage Theft Prevention Act, as codified in the NYLL, requires employers to provide employees with a written wage notice within ten business days of their start of employment and wage statements with each wage payment. N.Y. Lab. Law § 195(1). The wage notice must be written in English and the employee's primary language and must include the employee's rate of pay, pay period and date, any allowances taken from the wages, and the employer's contact information. *See Zhang v. Great Sichuan on 3rd Ave., Inc.*, 334 F. Supp. 3d 621, 622 (S.D.N.Y. 2018) (citing N.Y. Lab. Law § 195(1)(a)). The employer must obtain a signed acknowledgment of the wage notice from the employee and preserve that written acknowledgment for six years. N.Y. Lab. Law § 195(1)(a). Under the NYLL, employees are entitled to recover statutory damages for wage notice violations of "fifty dollars for each work day that the violation occurred or continued to occur, but not to exceed a total of five thousand dollars." N.Y. Lab. Law § 198(1-b); *see Teofilo v. Real Thai Cuisine Inc.*, No. 18 Civ. 7238 (KPF), 2021 WL 22716, at *4 (S.D.N.Y. Jan. 4, 2021). Thus, an employee would hit the statutory maximum of $5,000 if he or she works

25

100 days without the employer satisfying New York's wage notice requirements. As to wage notice violations that occurred before February 27, 2015, however, recovery was limited to "fifty dollars *for each work week* that the violations occurred or continue to occur, but not to exceed a total of *two thousand five hundred dollars*." N.Y. Lab. Law § 198(1-b) (effective Apr. 9, 2011 to Feb. 26, 2015) (emphasis added).[10]

**Genxiang Zhang.** Genxiang Zhang was never provided "written notice, in English or Chinese ([his] native language), of [his] rate of pay, employer's regular pay day, and such other information required by the NYLL." Genxiang Zhang Affidavit ¶ 28. Because he worked at Hiro Sushi for approximately 565 days, *id.* ¶ 10, Genxiang Zhang is entitled to the maximum damages of $5,000 in connection with the Defaulting Defendants' wage notice violations.

**Xinhui Zhang**. Xinhui Zhang similarly was not provided, either at the time he was hired or at any point thereafter, "written notice in [his] primary language (Chinese) regarding [his] rate or rates of pay and basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any 'doing business as' names used by the employer; the physical and mailing address of the employer's main office or principal place of business; and the telephone number of the employer." Xinhui Zhang Affidavit ¶ 20. Xinhui Zhang worked at Hiro Sushi for a thirteen-week period from March 1, 2015 to May 31, 2015, working six days per week. *Id.* ¶¶ 3-4. He therefore worked at Hiro Sushi for a total of seventy-eight days, and is entitled to damages in the amount of $3,900 for the Defaulting Defendants' wage notice violations.

---

[10] This prior version of NYLL section 198(1-b) applies only to Dan Dan Yuan, whose period of employment at Hiro Sushi was from October 27, 2014 to February 8, 2015.

***Yu Zhen Zheng***.  Yu Zhen Zheng also did not receive from Hiro Sushi, either at the time of his hiring or at any point while employed there, "written notice in [his] primary language (Chinese) regarding [his] rate or rates of pay and basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any 'doing business as' names used by the employer; the physical and mailing address of the employer's main office or principal place of business; and the telephone number of the employer." Yu Zhen Zheng Affidavit ¶ 19.  Yu Zhen Zheng worked at Hiro Sushi six days per week from April 1, 2015 to June 30, 2015, which consists of thirteen weeks and one day.  *Id.* ¶¶ 3-4.  He therefore worked at Hiro Sushi for approximately seventy-nine days, and is entitled to damages in the amount of $3,950 for the Defaulting Defendants' wage notice violations.

***Dan Dan Yuan***.  Dan Dan Yuan also was not provided, either at the time she was hired or at any point thereafter, "written notice in [her] primary language (Chinese) regarding [her] rate or rates of pay and basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any 'doing business as' names used by the employer; the physical and mailing address of the employer's main office or principal place of business; and the telephone number of the employer."  Dan Dan Yuan Affidavit ¶ 28.  Dan Dan Yuan worked at Hiro Sushi for a period of fifteen weeks from October 24, 2014 to February 8, 2015.  *Id.* ¶ 3.  Because Dan Dan Yuan's period of employment is covered under the prior version of NYLL section 198(1-b), she is entitled to $750 in damages in connection with the Defaulting Defendants' wage notice violations.

## I.   Failure to Provide Wage Statement

The Wage Theft Prevention Act also requires employers to provide employees with wage statements with each wage payment.  N.Y. Lab. Law § 195(3).  "Each wage statement must list,

27

*inter alia*, the dates of work covered by that payment of wages, the employer's address and phone number, the applicable rate or rates of pay, applicable deductions, and any allowances claimed as part of the minimum wage." *Java v. El Aguila Bar Rest. Corp.*, No. 16 Civ. 6691 (JLC), 2018 WL 1953186, at *12 (S.D.N.Y. Apr. 25, 2018) (citing N.Y. Lab. Law § 195(3)) (quotations and alterations omitted).  Under the NYLL, employees are entitled to recover statutory damages for wage statement violations of "two hundred fifty dollars for each work day that the violation occurred or continued to occur, but not to exceed a total of five thousand dollars."  N.Y. Lab. Law § 198(1-d); *see Teofilo*, 2021 WL 22716, at *4.  Thus, an employee would hit the statutory maximum of $5,000 if he or she works twenty days without the employer satisfying New York's wage statement requirements.  As with the wage notice provision, the NYLL provided for lower damages for violations prior to February 27, 2015.  Under that prior version of NYLL section 198(1-d), recovery for wage statement violations was limited to "*one hundred dollars* for *each work week* that the violations occurred or continue to occur, but not to exceed a total of *twenty-five hundred dollars*."  N.Y. Lab. Law § 198(1-d) (effective Apr. 9, 2011 to Feb. 26, 2015) (emphasis added).

   ***Genxiang Zhang.***  Genxiang Zhang alleges that the Defaulting Defendants did not provide him with paystubs while working at Hiro Sushi.  Genxiang Zhang Affidavit ¶ 27; *see also id.* ¶ 29 ("Throughout my employment, my wage statements were not accurately maintained which failed to provide the adequate wage rate per hour, how many hours I worked per week, and the accurate wage rate.").  Moreover, "[t]he paystubs provided to [him] by 39 WEA FOOD GROUP, INC. [for the period he worked at Hiro Sushi from September 1, 2015 to December 20, 2015] failed to indicate the amount of tip credit per hour, and . . . failed to identify HIRO SUSHI AT OLLIE'S INC. as [his] employer."  *Id.* ¶ 29.  Because Genxiang Zhang worked approximately 565 days at

Hiro Sushi, *id.* ¶ 10, he is entitled to maximum damages in the amount of $5,000 for the Defaulting Defendants' wage statement violations.

**Xinhui Zhang**.  Xinhui Zhang was not provided paystubs while working at Hiro Sushi. Xinhui Zhang Affidavit ¶ 21.  Because Xinhui Zhang worked there for approximately seventy-eight days, *id.* ¶¶ 3-4, he too is entitled to maximum damages in the amount of $5,000 for the Defaulting Defendants' wage statement violations.

**Yu Zhen Zheng**.  Yu Zhen Zheng also did not receive paystubs while working at Hiro Sushi.  Yu Zhen Zheng Affidavit ¶ 20.  Because Yu Zhen Zheng worked there approximately seventy-nine days, *id.* ¶¶ 3-4, he is entitled to maximum damages in the amount of $5,000 for the Defaulting Defendants' wage statement violations.

**Dan Dan Yuan**.  Dan Dan Yuan alleges that during her period of employment at Hiro Sushi, her "wage statements were not accurately maintained" and the Defaulting Defendants "failed to provide the adequate wage rate per hour, how many hours [she] worked per week, and the accurate wage rate."  Dan Dan Yuan Affidavit ¶ 29.  Because her period of employment is covered under the prior version of NYLL section 198(1-b) and because she worked fifteen weeks, she is entitled to recover $1,500 in damages for the Defaulting Defendants' wage statement violations.

## J.  Pre-Judgment Interest

A plaintiff who prevails on a NYLL wage claim is entitled to pre-judgment interest on any "underpayment" of wages.  *See* N.Y. Lab. Law § 198(1-a).[11]  The award of pre-judgment interest,

---

[11] A plaintiff who receives liquidated damages under the FLSA is entitled to "prejudgment interest only on unpaid wages and spread of hours pay for which liquidated damages pursuant to the FLSA [are] not assessed."  *Angamarca v. Pita Grill 7 Inc.*, No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *9 (S.D.N.Y. Aug. 2, 2012).  Here, the Court has not assessed FLSA

however, "applies *only* to the amount of underpayment of wages, not the liquidated damages." *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017).   Additionally, "[p]rejudgment interest is not available for violations of the wage statement or wage notice provisions." *Maria v. Rouge Tomate Chelsea LLC*, No. 18 Civ. 9826 (VSB) (GWG), 2020 WL 6049893, at *6 (S.D.N.Y. Oct. 14, 2020), *report and recommendation adopted*, 2021 WL 734958 (S.D.N.Y. Feb. 25, 2021).

Pre-judgment interest in New York runs at the rate of nine percent per annum.   N.Y. C.P.L.R. §§ 5001(a), 5004.   "Interest is calculated using the simple rate, not a compounded rate." *Morales v. MW Bronx, Inc.*, No. 15 Civ. 6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016) (citing *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 91 (2d Cir. 1998)).   The starting date from which a court computes this interest is "the earliest ascertainable date the cause of action existed." *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 512 (2d Cir. 1994) (quoting N.Y. C.P.L.R. § 5001(b)).   However, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b).   "New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date.'" *Marfia*, 147 F.3d at 91 (citing *155 Henry Owners Corp. v. Lovlyn Realty Co.*, 647 N.Y.S.2d 30, 32 (App Div. 1996)); *Morales*, 2016 WL 4084159, at *10 ("The date of choice is left to the district court's discretion, as is the

---

liquidated damages on any unpaid minimum wages and overtime wages owed to Plaintiffs.   It instead has assessed liquidated damages under the NYLL only.   Plaintiffs therefore have a right to pre-judgment interest on all their unpaid wages claims at New York's statutory rate of nine percent per year.   *See* N.Y. C.P.L.R. §§ 5001(b), 5004(a); *Tackie v. Keff Enterprises LLC*, No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014) ("[P]laintiffs are entitled to prejudgment interest on any compensatory damages awarded under the NYLL for which there is no corresponding award of liquidated damages under FLSA.").

method of calculating the 'single reasonable intermediate date.'").  Here, Plaintiffs' claims for unpaid wages arose at various times.  Accordingly, the Court will calculate pre-judgment interest from the midpoint date between the first and last days of employment for each Plaintiff's employment period.  *Accord Campos v. Quentin Mkt. Corp.*, No. 16 Civ. 5303 (RER), 2018 WL 9945754, at *8 (E.D.N.Y. Oct. 17, 2018) (report and recommendation) ("Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered.").

*Genxiang Zhang.*  Genxiang Zhang worked at Hiro Sushi from September 1, 2015 to October 31, 2017, and the approximate midpoint date of his employment is October 1, 2016. Accordingly, Genxiang Zhang is entitled to pre-judgment interest on his damages for unpaid wages from October 1, 2016 until the date the judgment is entered.

*Xinhui Zhang.*  Xinhui Zhang worked at Hiro Sushi from March 1, 2015 to May 31, 2015, and the approximate midpoint date for his employment is April 16, 2015.  Accordingly, Xinhui Zhang is entitled to pre-judgment interest on his damages for unpaid wages from April 16, 2015 until the date the judgment is entered.

*Yu Zhen Zheng.*  Yu Zhen Zheng worked at Hiro Sushi from April 1, 2015 to June 30, 2015, and the approximate midpoint date for his employment is May 16, 2015.  Accordingly, Yu Zhen Zheng is entitled to pre-judgment interest on his damages for unpaid wages from May 16, 2015 until the date the judgment is entered.

*Dan Dan Yuan.*  Dan Dan Yuan worked at Hiro Sushi from October 27, 2014 to February 8, 2015, and the approximate midpoint date for her employment is December 18, 2014. Accordingly, Dan Dan Yuan is entitled to pre-judgment interest on her damages for unpaid wages from December 18, 2014 until the date the judgment is entered.

### K.  Total Damages

*Genxiang Zhang.*   As set forth above, Genxiang Zhang in due $7,173.34 in unpaid minimum wage; $7,173.34 in liquidated damages; $5,000 in penalty for failure to provide wage notice; $5,000 in penalty for failure to provide wage statements; and pre-judgment interest on the unpaid wages.  Thus, the total amount of damages due Genxiang Zhang is $24,346.68, plus pre-judgment interest on $7,173.34 that is calculated from October 1, 2016 to the date judgment is entered.

*Xinhui Zhang.*   As set forth above, Xinhui Zhang is due $8,371.76 in unpaid overtime wages; $691.25 in unpaid spread-of-hours pay; $9,063.01 in liquidated damages; $3,950.00 in penalty for failure to provide wage notice; $5,000 in penalty for failure to provide wage statements; and pre-judgment interest on the unpaid wages.  Thus, the total amount of damages due Xinhui Zhang is $27,076.02, plus pre-judgment interest on $9,063.01 that is calculated from April 16, 2015 to the date judgment is entered.

*Yu Zhen Zheng.*   As set forth above, Yu Zhen Zheng is due $6,337.50 in unpaid overtime; $682.50 in unpaid spread-of-hours pay; $7,020.00 in liquidated damages; $3,900.00 in penalty for failure to provide wage notice; $5,000 in penalty for failure to provide wage statements; and pre-judgment interest on the unpaid wages.  Thus, the total amount of damages due Yu Zhen Zheng is $22,940.00, plus pre-judgment interest on $7,020.00 that is calculated from May 16, 2015 to the date judgment is entered.

*Dan Dan Yuan.*   As set forth above, Dan Dan Yuan is due $1,959.88 in unpaid minimum wages; $5,640.18 in unpaid overtime wages; $431.10 in unpaid spread-of-hours pay; $8,031.16 in liquidated damages; $750.00 in penalty for failure to provide wage notice; $1,500.00 in penalty for failure to provide wage statements; and pre-judgment interest on the unpaid wages.  Thus, the

32

total amount of damages due Dan Dan Yuan is $18,312.32, plus pre-judgment interest on $8,031.16 that is calculated from December 18, 2014 to the date judgment is entered.

### IV.  Attorneys' Fees and Costs

The FLSA and the NYLL both provide for prevailing plaintiffs to receive an award of reasonable attorneys' fees and costs.  *See* 29 U.S.C. § 216(b) (providing that, in addition to the judgment award, the Court "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Lab. Law § 198(1) (providing that a court may award "ordinary costs"); N.Y. Lab. Law § 198(1-a) (providing that a court shall award to a prevailing wage claim plaintiff "all reasonable attorney's fees"); *see also* N.Y. Lab. Law § 663(1) (providing for award of costs and "all reasonable attorney's fees" to an employee paid less than the wage to which he or she was entitled under the NYLL).  Given the default of Hiro Sushi, Rong, and Lu, and the finding of liability in favor of Plaintiffs, Plaintiffs are prevailing parties in this litigation and entitled to reasonable attorneys' fees and costs.

In determining an appropriate fee, "courts typically start with a determination of the lodestar amount, which is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  *Liang Huo v. Go Sushi Go 9th Ave.*, No. 13 Civ. 6573 (KBF), 2014 WL 1413532, at *7 (S.D.N.Y. Apr. 10, 2014) (quoting *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007)).  The counsel for the prevailing party must "justify the reasonableness of the requested rate or rates," which requires that party "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  While the prevailing party has the burden of showing the reasonableness of its fees, "the Court may also apply its 'own knowledge' or rates charged in the

community in assessing the reasonableness of the rates sought." *Thai-Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic*, No. 10 Civ. 5256 (KMW) (DF) 2012 WL 5816878, at *5 (S.D.N.Y. Nov. 14, 2012) (quoting *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987)).   In submitting evidence to support its proposed fees, counsel "should make good faith efforts to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Liang Huo*, 2014 WL 1413532, at *7 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).   Plaintiffs have submitted a declaration from their counsel, setting forth the grounds for their requested hourly rates, along with detailed billing records for work done on this case.  *See* Troy Fees Declaration.

The Court begins with considering what should be the reasonable hourly rates for the attorneys and legal staff who worked on this matter.  Plaintiffs seek an hourly rate of $400 for John Troy, who is the principal of Troy Law, PLLC, and has represented Plaintiffs since the inception of this litigation.  *Id.* ¶¶ 16, 27.  Mr. Troy is a 1985 graduate of Dickinson School of Law, and has been a member of the New York bar since 1989.  *Id.*  His law firm specializes in wage-and-hour employment litigation, and, as of the date of his August 20, 2020 declaration, Mr. Troy was the attorney of record for at least 163 such cases in this District, 145 such cases in the Eastern District of New York, and forty such cases in the Western District of New York.  *Id.* ¶¶ 18-22.  Based on Mr. Troy's qualifications and experience, and the Court's own knowledge of rates charged in the community, the Court concludes, like the Honorable Alison J. Nathan also recently determined, that $400 is an appropriate and reasonable hourly rate for Mr. Troy.  *See, e.g.*, *De Los Santos v. Hat Trick Pizza, Inc.*, No. 16 Civ. 6274 (AJN), 2021 WL 4150967, at *2 (S.D.N.Y. Sept. 13, 2021); *Jia Wang Lin v. Ginza 685 Inc.*, No. 18 Civ. 12202 (AJN), 2021 WL 2138511, at *2 (S.D.N.Y. May 26, 2021); *see also Yuajian Lin v. La Vie En Schezuan Rest. Corp.*, No. 15 Civ. 9507 (DF),

34

2020 WL 1819941, at *5 (S.D.N.Y. Apr. 9, 2020) (finding $325 per hour to be an appropriate rate for Mr. Troy).

Plaintiffs also seek an hourly rate of $200 for Aaron Schweitzer, who is a managing associate at Troy Law.  Troy Fees Declaration ¶¶ 28, 34.  Mr. Schweitzer is a 2016 *cum laude* graduate of Fordham University School of Law, where he concentrated in employment law.  *Id.* ¶ 28.  He has been admitted to the New Jersey bar since November 2017 and to the New York bar since May 2018.  *Id.*  Mr. Schweitzer joined Troy Law in April 2017 and, as of the date of the Troy Fees Declaration, he had litigated with the firm many wage-and-hour cases in federal court, including in the Southern, Eastern, and Northern Districts of New York, the District of New Jersey, and the District of Massachusetts.  *Id.* ¶¶ 28-32.  Given that Mr. Schweitzer had significantly less experience than Mr. Troy when they worked on this case, however, the Court again agrees with Judge Nathan that an hourly rate of $150 for Mr. Schweitzer would be reasonable.  *See De Los Santos*, 2021 WL 4150967, at *2; *Jia Wang Lin*, 2021 WL 2138511, at *2; *see also Yuajian Lin*, 2020 WL 1819941, at *5 (finding a $125 hourly rate for Mr. Schweitzer to be reasonable).

Another managing associate at Troy Law, George Kibum Byun, also worked on this matter. Troy Fee Declaration ¶ 35.  While not entirely clear from Mr. Troy's declaration, it appears that Plaintiffs seek an hourly rate of $150 for Mr. Byun.  *See id.* ¶ 63.  Mr. Byun is a 2015 graduate of the Benjamin N. Cardozo School of Law, and has been admitted as a member of the New York bar since 2015.  *Id.* ¶ 36.  As of the date of Mr. Troy's August 22, 2020 declaration, Mr. Byun had over three years of legal experience working at Troy Law, at another law firm, and as a judicial intern for an administrative law judge at the U.S. Equal Employment Opportunity Commission. *Id.* ¶ 38.  And as of that declaration, Mr. Byun had been counsel in thirty-three cases in the Southern District of New York and thirty-eight cases in the Eastern District of New York.  *Id.* ¶¶ 44-45.

Because his experience appears to be similar to Mr. Schweitzer's, the Court finds $150 per hour to be a reasonable fee for Mr. Byun as well.  *See Yuajian Lin*, 2020 WL 1819941, at *5 (finding an hourly rate of $160 to be reasonable for Mr. Byun).

An associate at Troy Law named Leanghour Lim worked on this case as well, and Plaintiffs seek an hourly rate of $100 for her.  Troy Fees Declaration ¶¶ 47, 52.  Ms. Lim graduated from State University of New York ("SUNY") Buffalo Law School in 2018, and also received a Master of Law in Intellectual Property from the Benjamin N. Cardozo Law School.  *Id.* ¶ 47.  She has been admitted to the New York bar since 2019.  *Id.*  Prior to joining Troy Law, Ms. Lim externed at the Appeals Division for the New York City Law Department and at the Research Foundation for SUNY.  *Id.*  As of the time of the Troy Fees Declaration, Ms. Lim was counsel in thirty cases in the Southern District of New York, twenty-one cases in the Eastern District of New York, and one case in the District of New Jersey.  *Id.* ¶¶ 49-51.  The Court agrees that a $100 hourly rate is reasonable for Ms. Lim.  *Id.* ¶ 52.

Plaintiffs also seek compensation for the work performed on this case by two paralegals at the firm, Preethi Kilaro and Bella Ho.  *Id.* ¶¶ 53, 55-56, 60.  Ms. Kilaru received a Master of Laws from Southern Methodist University's Deadman School of Law in December 2017, and before that graduated from Karnataka State Law University in India in July 2016.  *Id.* ¶ 53.  Ms. Kilaru has worked at Troy Law since April 2018, and before that was a legal assistant and advisor in India, where she specialized in civil practice.  *Id.*  Plaintiffs seek an hourly rate of $100 for Ms. Kilaru.  *Id.* ¶ 55.  Ms. Ho received a Bachelor of Science degree in International Business from Soochow University in Taiwan in 2013, and a Master of Business Administration degree from the University of Illinois at Chicago in 2016.  *Id.* ¶ 57.  Ms. Ho joined Troy Law in March 2017.  *Id.* ¶ 58.  Plaintiffs seek an hourly rate of $75 for Ms. Ho.  *Id.* ¶ 60.  Based on their experience, the

Court finds an hourly rate of $70 to be reasonable for both Ms. Kilaru and Ms. Ho. *See Jia Wang Lin*, 2021 WL 2138511, at *2 (approving an hourly rate of $70 for Ms. Kilaru); *Yuajian Lin*, 2020 WL 1819941, at *6 (same)

Determining the reasonable attorneys' fees here is complicated by the fact that this case also involved six other Defendants in addition to the three Defaulting Defendants. Naturally, certain work performed by the attorneys and staff applied to both the Defaulting Defendants and to other Defendants that are not subject to this Order. To address this, Plaintiffs propose that their legal team be compensated at a half rate for any tasks involving the Defaulting Defendants that also applied to other Defendants. Troy Fee Declaration ¶ 61. The Court finds this approach reasonable, and applies rates half of those that are set forth above for such work.

The Court also has reviewed Plaintiffs' request for hours billed and finds them to be reasonable. In addition to the Troy Fee Declaration, Plaintiffs have submitted an invoice setting forth time entries for work performed by the attorneys and staff in this action, including the dates, work description, billable hours, rate, and fees for each attorney and staff at Troy Law. *Id.*, Exh. 1 ("Invoice"). Plaintiffs also filed a memorandum of law in support of their motion for attorneys' fees and costs. Dkt. 145. The Court has reviewed the Invoice to confirm both the reasonableness of the hours billed and that no compensation is sought for tasks that did not apply to the Defaulting Defendants. Those rate and hours yield the following:

- **John Troy**: 20.13 hours (for work involving only the Defaulting Defendants) at $400 per hour and 23.96 hours (for work involving both the Defaulting Defendants and other Defendants) at $200.00 per hour, totaling $12,844.00.

- **Aaron Schweitzer**: 53.25 hours (for work involving only the Defaulting Defendants) at $150.00 per hour and 62.56 hours (for work involving both the Defaulting Defendants and the other Defendants) at $75.00 per hour, totaling $12,679.50.

- **George Byun**: 27.88 hours (for work involving both the Defaulting Defendants and the other Defendants) at $75.00 per hour, totaling $2,091.00.

- **Leanghour Lim**: 2.90 hours (for work involving only the Defaulting Defendants) at $100.00 per hour, totaling $290.00.

- **Preethi Kilaru**: 20.84 hours (for work involving only the Defaulting Defendants) at $70.00 per hour and 17.76 hours (for work involving both the Defaulting Defendants and the other Defendants) at $35.00 per hour, totaling $2,080.40.

- **Bella Ho**: 2.90 hours (for work involving both the Defaulting Defendants and the other Defendants) at $35.00 per hour, totaling $101.50.

Thus, the Court finds the total amount of attorneys' fees to be $30,086.40.  The Court also finds the requested $820 in costs to be appropriate.  Dkt. 144-1 at 12.  The Court therefore awards a total of $30,906.40 in attorneys' fees and costs owed by Hiro Sushi, Rong, and Lu.

Lastly, the Court awards Plaintiffs post-judgment interest pursuant to 28 U.S.C. § 1961(a). Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 53 (E.D.N.Y. 2015) ("The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." (quotations omitted)).  Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield,

as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."  28 U.S.C. § 1961(a).

## V.  Conclusion

For the reasons discussed above, the Court awards damages owed by Defendants Hiro Sushi at Ollie's Inc., Tao Rong, and Yi Lu, as well as attorneys' fees and costs, and post-judgment interest.  The Clerk of Court is respectfully directed to calculate pre-judgment interest at the statutory rate of nine percent per annum on damages for unpaid wages, overtime pay, and/or spread-of-hours pay as follows: for Genxiang Zhang in the amount of $7,173.34 from October 1, 2016 to the date of judgment; for Xinhui Zhang in the amount of $9,063.01 from April 16, 2015 to the date of judgment; for Yu Zhen Zheng in the amount of $7,020.00 from May 16, 2015 to the date of judgment; and for Dan Dan Yuan in the amount of $8,031.16 from December 18, 2014 to the date of judgment.

The Clerk of Court is further directed to enter judgment in favor of Plaintiffs against Defendants Hiro Sushi at Ollie's Inc., Tao Rong, and Yi Lu as follows: for Genxiang Zhang in the amount of $24,346.68 plus pre-judgment interest on $7,173.34 that is calculated from October 1, 2016 to the date judgment is entered; for Xinhui Zhang in the amount of $27,076.02, plus pre-judgment interest on $9,063.01 that is calculated from April 16, 2015 to the date judgment is entered; for Yu Zhen Zheng in the amount of $22,940,00, plus pre-judgment interest on $7,020.00 that is calculated from May 16, 2015 to the date judgment is entered; for Dan Dan Yuan in the amount of $18,312.32, plus pre-judgment interest on $8,031.16 that is calculated from December 18, 2014 to the date judgment is entered; an award of attorneys' fee and costs owed by Defendants Hiro Sushi at Ollie's Inc., Tao Rong, and Yi Lu in the amount of $30,906.40; and post-judgment interest.

The Clerk of Court is further directed to close the motion pending at Docket Number 143, and to close this case.

      SO ORDERED.

Dated: July 11, 2022
      New York, New York

                                       JOHN P. CRONAN
                           United States District Judge